IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 7, 2004

## JASON GALE OWENS and JORDAN BLAKE OWENS v. STATE OF TENNESSEE

Direct Appeal from the Circuit Court for Obion County
No. 3-427    William B. Acree, Jr., Judge

No. W2004-01244-CCA-R3-PC  - Filed February 25, 2005

This is an appeal as of right from the trial court's denial of post-conviction relief.  Upon entering guilty pleas, the two Defendants were convicted of attempted first degree murder and attempted second degree murder respectively, and received sentences of fifteen and ten years' incarceration. The Defendants filed petitions for post-conviction relief, and after a consolidated evidentiary hearing, the trial court denied relief to both Defendants. The Defendants now appeal to this Court raising the issues of ineffective assistance of counsel and involuntary pleas. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee, for the appellants, Jason Gale Owens and Jordan Blake Owens.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

While the record on appeal contains only sparse information about the facts that led to the convictions at issue in this appeal, the record does reveal that the two Defendants, brothers Jason

Owens[1] and Jordan Owens, comprised half of a four member group involved in a plan and an attempt to kill two victims. On or about August 7, 2002, one of the victims was lured into a rural area in west Tennessee and shot in the head with a .22 caliber derringer. Also charged in the incident were two females, one of whom was Defendant Jordan Owens' wife. According to the State's theory as it prepared for trial, while one of the women admitted to pulling the trigger, Defendant Jason Owens "was the one with the apparent motive."

For their role in the crime, the two Defendants were each indicted on six charges: two counts of conspiracy to commit first degree murder, two counts of attempted first degree murder, and two counts of aggravated assault. In January of 2003, the two Defendants accepted a package plea agreement in which Jason Owens pled guilty to one count of attempted first degree murder and received a sentence of fifteen years as a Range I offender, and Jordan Owens pled guilty to one count of the lesser-included offense of attempted second degree murder and received a sentence of ten years as a Range I offender.

In October of 2003, the Defendants both filed lengthy pro se petitions for post-conviction relief. They were appointed counsel, and amended petitions were filed on behalf of both Defendants, claiming the ineffective assistance of counsel and an involuntary guilty plea. Because the two Defendants raised identical claims in their amended post-conviction petitions, the trial court consolidated their cases and conducted a joint evidentiary hearing in April of 2004.

At the post-conviction hearing, the two Defendants' testimony was nearly identical. Both Defendants stated that they were represented by the same trial counsel ("Counsel"), and that they had met with him only two or three times prior to the entry of their guilty pleas. They further testified that they were not aware of any plea agreement until approximately half an hour before they entered their guilty pleas; they informed Counsel that they did not want to plead guilty; Counsel tried to persuade them otherwise; and when Counsel failed to convince them to plead guilty he called on their parents to persuade them to accept the plea agreement. The Defendants' father, Jim Owens, testified that Counsel informed him and the Defendants' mother that if the Defendants refused the plea bargain their sons could be locked up for sixty years. Counsel then asked the Defendants' parents to "[t]alk some sense to 'em." The elder Mr. Owens also testified that he and his wife pleaded with their sons to accept the plea agreement, and his wife cried throughout the confrontation.

Jason Owens testified that Counsel informed him he could get fifty to sixty years if convicted. He also stated that Counsel explained to him that if he accepted the agreement, he would be sentenced to fifteen years, but the sentence would be mitigated to approximately twelve years. On cross-examination, Jason Owens admitted that the reason he pled guilty was because "I didn't have nothing on my mind except for one thing, and that was to do whatever I had to do to get my mama to stop crying, because I don't want my mama crying."

---

[1] The record on appeal is inconsistent pertaining to the spelling of Defendant Jason Owen's name. While the Defendant testified at the post-conviction hearing that his first name is spelled "Jasen," his judgment of conviction and Department of Correction records reflect that his name is spelled "Jason ."

Jordan Owens testified that Counsel told him he was facing a possible sentence of forty to fifty years, but his brother would face more than that if he didn't accept the package plea agreement. He also stated that Counsel informed him that with the plea agreement he would be sentenced under a mitigated range, which he understood to mean that while he would technically be sentenced to ten years, "it would only equivalte [sic] to like eight, at the most." He also testified that he accepted the plea agreement because he understood it was the only way his brother could get a sentence of fifteen years as opposed to sixty years. Upon cross-examination, Jordan Owens admitted that the reason he and his brother pled guilty was "[b]ecause our mama and our daddy . . . begged us to take this plea so that we could finally get out, be free, and still have them, maybe have some years left before they died that we could be with them."

Defendants' trial counsel testified at the post-conviction hearing that he met with the Defendants approximately twelve times and that he intended to go to trial until he was informed that Jordan Owen's wife had accepted a plea agreement and would testify for the State against his clients. Upon learning this, he was also presented with an offer from the State which he considered acceptable, and presented it to the Defendants. Counsel admitted that he may have told the Defendants that if they were convicted of all six charges and their sentences were stacked, they could possibly face fifty to sixty years, however, he also informed them that some of the charges would most likely be merged and they were realistically facing sentences of twenty to thirty years. Counsel admitted that there was some confusion over whether the Defendants would be sentenced as mitigated offenders during the plea negotiation. Counsel also noted that there was talk of mitigation factors, which could have further confused the Defendants because the word "mitigated" was used several times throughout the plea negotiation process.

After the post-conviction hearing, the trial court issued a written order denying the Defendants' petitions for post-conviction relief. It is from this order that the Defendants appeal.

**STANDARD OF REVIEW**

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the

right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

**ANALYSIS**

In this appeal from denial of post-conviction relief, the Defendants argue they received ineffective assistance of counsel, and due to their trial counsel's deficiencies their guilty pleas were involuntary. The Defendants allege that their trial counsel's performance was deficient in three

respects: 1) he informed them that they would be sentenced as mitigated offenders and they were not; 2) he misinformed them that they would face a sentence of sixty years if convicted of all charges at trial; and 3) he coerced them into accepting the plea agreement through the use of their emotionally distraught parents. The Defendants further argue that but for the deficiencies of their trial counsel they would not have accepted the plea agreement and therefore their guilty pleas were involuntary. They insist that the trial court erred by denying them post-conviction relief. We disagree.

## I. Ineffective Assistance

After considering the testimony presented at the post-conviction hearing, the trial court made the following findings:

> The Court finds the petitioners have failed to carry the burden of proof to meet the criteria set forth above. According to both petitioners, the reason they entered a plea of guilty was because of their mother. Trial counsel had nothing to do with the mother's emotional plea to her sons to enter a plea of guilty. The Court does not find that the petitioner's trial counsel wrongfully advised them about the possible length of sentence or misled them about a mitigated status or coerced them, but if trial counsel did, the result would be the same. That is, the reason the petitioners entered a plea of guilty was because of their mother.

After considering the facts presented to us on appeal, we conclude that the Defendants have failed to demonstrate that the evidence preponderates against the trial court's findings.

While there may have been some confusion the day the pleas were entered as to whether the sentence the Defendants would receive pursuant to the plea agreement would classify either of them as a "mitigated offender," or was reduced due to "mitigation factors," the transcript from the guilty plea hearing and technical record reveals that the sentence itself was clearly articulated. Jason Owens testified that he understood the charge he was pleading guilty to carried a sentence of between fifteen and twenty-five years, and Jordan Owens testified that he understood the charge he pled guilty to carried a sentence of between eight and twelve years. The release eligibility was clarified at the end of the guilty plea hearing when Counsel asked the court if the sentence was "thirty percent," to which the judge answered in the affirmative.

Additionally, both Defendants' plea agreement/trial waiver forms indicated their sentence length--fifteen years and ten years respectively. These same forms also clearly stated their release eligibility dates expressed as a percentage of sentence served before parole eligibility--30% for both. The sentence ranges for the convictions the Defendants pled guilty to and the 30% release eligibility date both confirm that the Defendants were informed and agreed to be sentenced as Range I standard offenders. See Tenn. Code Ann. § 40-35-101 et seq. Having fully understood and agreed to the actual sentence length and release eligibility date, it matters not whether the Defendants were confused as to whether they would be labeled a "mitigated" or "standard" offender. See Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004) (holding that conflicting and somewhat incorrect advice given to a defendant by trial counsel during plea proceedings does not necessarily

constitute ineffective assistance of counsel). Accordingly, we find that the Defendants' trial counsel was not deficient in advising his clients about the sentences they would receive pursuant to the plea agreement.

The trial court also noted that although the Defendants claimed they were misled by their trial counsel into thinking they would face a sentence of fifty to sixty years if the case went to trial, Counsel testified that he informed his clients that they were realistically "looking at 20 to 30 years." We are reluctant to hold that advising a client charged with six serious felony convictions that the client faced a possible sentence of fifty to sixty years is so inaccurate as to amount to deficient representation. Nevertheless, we need not make such a determination in this case. The trial court accredited the testimony of the Defendants' trial counsel that he gave the Defendants a significantly more accurate estimate of a twenty to thirty year sentence if a jury was to find them guilty. As stated above, this Court will not re-weigh or re-evaluate evidence, and all questions concerning the credibility of witnesses and the weight and value to be given their testimony are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156. Accordingly, we conclude that the Defendants' trial counsel did not misinform his clients about the possible length of sentence they faced if they elected not to plead guilty, and therefore did not provide deficient representation.

While the Defendants may have felt pressured to accept the plea agreement, any coercion they faced must be attributed to their own desire to appease their parents, and cannot be imputed to Counsel. It is well settled law that the inducement to plead guilty so as to secure leniency or a shorter sentence than that which may result from a jury trial does not constitute grounds for invalidating a guilty plea. See Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). See also George v. State, 533 S.W.2d 322, 326 (Tenn. Crim. App. 1975) (holding that a guilty plea is not rendered involuntary by the fact that the accused was faced with the difficult election between a likely lesser sentence on a plea agreement and the possibility of a greater sentence upon a plea of not guilty, or fear that he would be prosecuted for additional offenses). The emotional plea of the Defendants' mother was her attempt to induce the Defendants to secure a sentence short enough to ensure she would be alive to see her sons released from prison.

Furthermore, the record on appeal reveals that after the Defendants had met with their parents and decided to enter guilty pleas, the trial court meticulously followed the Boykin due process safeguards when questioning the Defendants at the plea hearing, and the evidence demonstrates that the Defendants did indeed enter their pleas knowingly, intelligently and voluntarily. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). Accordingly, we agree that Counsel's request that the Defendants' parents talk to their sons did not amount to coercion, and therefore did not constitute deficient representation.

After examining the entire record on appeal, we agree that the Defendants have failed to prove their trial counsel provided deficient representation. Having found that the Defendants have not met the first prong of the Strickland test, we are not required to examine the issue further. Nonetheless, we note that the Defendants have also failed to prove that "but for" the alleged errors of their trial counsel they would have insisted upon going to trial. Lockhart, 474 U.S. at 59. To the contrary, the Defendants presented no evidence which preponderates against the trial court's finding

that both Defendants entered a plea of guilty in large part to appease their mother.  Therefore, we conclude that the Defendants did not receive ineffective assistance of counsel.  This issue is without merit.

## II.  Involuntary Plea

The Defendants also claim they deserve post-conviction relief because their guilty pleas were involuntary.  Our supreme court set forth the standard pertaining to the requirements for a constitutionally valid guilty plea by first noting that "before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily." State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing to Boykin, 395 U.S. at 242).  Our high court further noted that "a plea is not 'voluntary' if it is the product of '[i]gnorence, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 242-43), or if the defendant  is "incompetent or otherwise not in control of his mental facilities" when the plea was entered. Id.

The Defendants have not asserted any grounds for declaring their guilty pleas involuntary other than the already addressed claims alleging ineffective assistance of counsel which this Court rejected above.  Accordingly, we find the Defendants have failed to point to any evidence that preponderates against the trial court's findings that their guilty pleas were entered voluntarily.  This issue is without merit.

## CONCLUSION

Finding no error, the judgment of the post-conviction court denying the Defendants relief is affirmed.

_____
DAVID H. WELLES, JUDGE