IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 19, 2003 Session

## DONNA JEAN SEXTON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Carter County**
**No. S12429    Lynn W. Brown, Judge**

---

**No. E2002-02313-CCA-R3-PC**
**April 14, 2004**

---

The petitioner, Donna Jean Sexton, appeals from the judgment of the Carter County Circuit Court denying her post-conviction relief from her convictions for first degree murder and aggravated robbery. The petitioner contends that (1) the post-conviction court erred by concluding that her amended, comprehensive petition was invalid because it was not properly verified under oath; (2) she received the ineffective assistance of counsel because her attorneys misinformed her as to the length of her sentence for first degree murder; and (3) her nolo contendere pleas were not knowingly, intelligently, and voluntarily made because the trial court never informed her that she was waiving constitutional rights and there was an insufficient factual basis for the petitioner's pleas. Although we conclude that the amended petition was not properly verified, we conclude the trial court correctly proceeded on all issues raised by the petitioner. We also hold that the trial court's findings and conclusions relative to the petitioner's claims are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Kenneth F. Irvine, Jr., Knoxville, Tennessee, for the appellant, Donna Jean Sexton.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Kenneth Carson Baldwin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner pled nolo contendere to the charged offenses of felony murder and aggravated robbery. Pursuant to the plea agreement, the trial court sentenced the petitioner to life with the possibility of parole for the murder and eight years for the aggravated robbery, to be served concurrently in the Department of Correction (DOC).

The petitioner's convictions resulted from the killing and robbery of the victim, an employee at a convenience store in June 1993. At the plea hearing, the state presented and the defendant stipulated to the following summary of the facts surrounding the offenses:

> Miss Sexton was criminally responsible as the law defines criminal responsibility for the murder of – of Mrs. Montgomery there at the market, the murder with which she's charged. She did not, however, it's not the state's theory, it would not be our proof that she was the person who committed the murder; but, that – but – and that she was more than a mere person who was present. But, that she was what used to be called an aider and abetter to that murder. . . . But, again, she feels that it's important, and – and we agree that she was not the person who stabbed Mrs. Montgomery, that – that caused the fatal wound upon Mrs. Montgomery. We believe that that was done by her companion in this crime Matney Putman.

At the post-conviction evidentiary hearing, the petitioner testified that she signed a statement that her attorney had prepared on her acceptance of the plea agreement, which stated that she would receive thirty years in prison when she pled nolo contendere and that anything less would be determined at the discretion of the parole board. She said she signed the statement in front of one of her attorneys, Mark Slagle, who prepared it. She said she did not learn that her sentence was sixty years until she went to prison. She said she would have gone to trial if she had known that the sentence for life in prison was sixty years. On cross-examination, she admitted that one of her reasons for not going to trial was to avoid the possibility of receiving the death penalty.

The record reflects that the petitioner had been in custody since 1991. She said that her parole eligibility date had been set for 2028, but the record reflects that sentencing credits will shorten the time.

Robert J. Jessee, co-counsel for the petitioner at the time of her plea agreement, testified that he told the petitioner that the state's plea offer was good and that she should take it to avoid the possibility of receiving the death penalty. He said he told her that there were no assurances about when she would get out of prison. He said he explained to the petitioner that the plea agreement stipulated that she would receive a concurrent sentence for the aggravated robbery charge. He said evidence increasing the chance that the petitioner would receive the death penalty if she went to trial included the following: the victim was a young mother; the killing was brutal, almost cutting off the victim's head; and when the petitioner's accomplice suggested calling the rescue squad to help the victim, the petitioner had responded, "Let the bitch die." He said that based on these facts, the jury might have imposed the death penalty if the case had gone to trial.

Mr. Slagle testified that he drafted the Acceptance of Plea Agreement that the petitioner signed and that it stated there was no guarantee the petitioner's prison sentence would be less than thirty years. He said the petitioner gave an incriminating statement to police about her involvement

in the crimes and that their defense would have been "battered woman syndrome" if they had gone to trial, although he questioned the likelihood of success. He said that the petitioner could have received the death penalty with Putnam's testimony against her but that he did not believe the probability was very high. He said he did not want to take a chance on the petitioner receiving the death penalty, especially when she had already admitted involvement in the killing. He said he told the petitioner she was gambling with her life if she rejected the state's offer. He acknowledged that the petitioner was interested in the amount of time she would be required to spend in prison when they discussed the state's offer of life with the possibility of parole. He said that he knew that a life sentence with the possibility of parole was sixty years. He said that in the statement of the plea agreement he drafted, he was trying to convey to the petitioner that there was no guarantee she would only serve nineteen years, the amount of time DOC personnel had previously told him people had been serving on a life sentence. He said, however, that based upon further discussions with the prosecuting attorney and DOC personnel, he told the petitioner that she could not expect to get out of prison before thirty years.

On cross-examination, Mr. Slagle testified that he wrote out the agreement between the petitioner and the state and that he had the petitioner sign it to prevent a future ineffective assistance of counsel claim. He said the provision that the petitioner would serve thirty years was based on what the DOC told him. He acknowledged, though, that conflicting language existed in the agreement because another sentence provided that the petitioner was "not guaranteed to receive any term of imprisonment less than thirty years and that any release date earlier is strictly at the discretion of the parole board and the governing powers of the State of Tennessee." He also acknowledged that the trial court never addressed the length of a sentence for life with the possibility of parole at the plea hearing.

The transcript from the plea hearing reflects that the assistant district attorney stated that the petitioner would not be eligible for parole until she served thirty years in prison. It also reflects that the trial court informed the petitioner of her constitutional rights but did not specifically state that she was waiving them.

The trial court found that the petitioner's amended petition was not properly verified under oath and dismissed the petition. The court, however, ruled on the petitioner's claims in the event that the petition was found to be properly verified by this court.

Relative to the ineffective assistance of counsel, the trial court acknowledged that the petitioner's attorneys provided her with conflicting parole eligibility information and that her original release eligibility date would have occurred after serving sixty percent of sixty years, i.e., thirty-six years. It found, though, that although the petitioner's parole eligibility at the time of the hearing was set for 2028, her release eligibility would occur after serving twenty-five years if she obtained normal sentence reduction credits. Also, the trial court was not convinced of the truth of the petitioner's claim that she would have gone to trial if she had known that her sentence was effectively sixty years. The trial court found that the petitioner had not been prejudiced by her attorneys' advice and concluded that she did not receive the ineffective assistance of counsel.

Relative to the validity of the petitioner's nolo contendere pleas, the trial court noted that the transcript of the plea hearing did not contain explicit waivers by the petitioner of her constitutional rights. However, it also noted that the petitioner was advised of all her constitutional rights as required by Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and found that the transcript reflected that the petitioner knew she was giving up those rights by pleading nolo contendere. The trial court concluded that the transcript, trial counsel's advising her of her alternatives, and her desire not to chance the death penalty showed that the petitioner knowingly, intelligently, and voluntarily entered her pleas. In this respect, although noting that the stipulation of facts at the plea hearing was "not a particularly clear stipulation," it believed that the stipulation indicated criminal responsibility for the acts of another. The trial court concluded that any deficiency in the factual basis for the pleas did not render them involuntary.

## I. PETITION VERIFIED UNDER OATH

The petitioner contends that the trial court erred in ruling that her comprehensive, amended petition was not valid. The record reflects that at the evidentiary hearing, the trial court told the petitioner's counsel that the comprehensive petition filed by counsel was not verified under oath as required by law. Counsel replied that he had certified in the petition that the allegations were true and correct to the best of his knowledge and belief. However, the trial court believed the certificate to be insufficient, although it noted that the petitioner's previous pro se amended petition remained valid because it was verified under oath. In any event, the trial court ruled on all the issues pursued by the petitioner at the evidentiary hearing.

Pursuant to the 1995 Post-Conviction Procedure Act, petitions and amendments to petitions must be verified under oath:

> The petitioner shall include allegations of fact supporting each claim for relief set forth in the petition and allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding. The petition and any amended petition shall be verified under oath. Affidavits, records or other evidence available to the petitioner supporting the allegations of the petition may be attached to it.

T.C.A. § 40-30-104(e).

The petitioner relies upon dictum in Roger Harris v. State, E1999-02056-CCA-R3-PC, Unicoi County (Tenn. Crim. App. July 28, 2000), to support her claim that counsel's certification suffices under the verification requirement of the Post-Conviction Procedure Act. In Roger Harris, the trial court summarily dismissed the March 1995 post-conviction petition and its amendments because they were not verified by oath or affirmation. This court and the state noted that the verification by oath requirement was not effective until May 1995 and did not apply to Harris's case. This court held that the trial court incorrectly applied the oath requirement and remanded the case

for further proceedings. However, this court then discussed the significance of counsel's having certified that he had investigated all the facts and the allegations were true and correct to the best of his knowledge and belief. It stated that the certification satisfied the verification by oath requirement. It also stated that absent proper verification, it would be appropriate for the trial court to give the petitioner the opportunity to make a proper oath. We note as significant that the same trial court and counsel in Roger Harris are before us in the present case.

Counsel's certificate in the present case in the amended, comprehensive petition is as follows:

> I . . . do hereby certify that I have investigated all of the above facts and do hereby state the foregoing is true and correct to the best of my knowledge and belief. My investigation and research have been done in close consultation with the petitioner, Ms. Donna Sexton.
>
> I also certify that I have thoroughly investigated the possible constitutional violations alleged by Ms. Sexton and any other possible grounds that Ms. Sexton may have for relief. I have discussed all the grounds I have discovered with Ms. Sexton. To the best of my knowledge I have raised all non-frivolous constitutional grounds warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law which Ms. Sexton has. I am aware that any ground not raised shall be forever barred by the application of T.C.A. § 40-30-206(g), or its predecessor provision, and have explained this to Ms. Sexton. This waiver provision is limited by several decisions of the Tennessee Supreme Court which have recognized a very limited exception to the rule of waiver.

Other than certifying the truth of the allegations to the best of counsel's knowledge and belief, the certificate generally conforms to the certificate required of post-conviction counsel by supreme court rule. See Tenn. S. Ct. R. 28, § 6(C)(2)-(4), Appendix C.

Given the fact that a petitioner is entitled to only one post-conviction case, the purpose of the supreme court rule and appendix are obvious – they ensure that all possible claims are investigated by counsel and all arguable constitutional claims are presented to the trial court for consideration. The rule, therefore, guides counsel for the petitioner's benefit. On the other hand, the statutory requirement that the allegations be verified under oath is intended to serve entirely different interests. Its goal is to deter or to reduce intentionally false allegations primarily made by petitioners by exposing them to aggravated perjury charges pursuant to T.C.A. § 39-16-703. The expected reduction in false claims should leave the criminal justice system with more time and resources to deal with arguably legitimate post-conviction claims.

In this regard, we respectfully disagree with the dictum in Harris relative to counsel's certification. We conclude that the requirement under T.C.A. § 40-30-104(e) that allegations of a petition and any amendments be verified under oath is not satisfied by counsel's certification. Whether prepared by a petitioner or by counsel, the petition and its amendments must be verified under oath.

Although the comprehensive petition in the present case was not verified under oath, we do not believe the circumstances justified limiting the petitioner's claims. The trial court did not notify the petitioner of its concerns until the evidentiary hearing. Moreover, the trial court noted that the petitioner's previous pleadings had been verified under oath. The trial court easily could have allowed the petitioner to verify the comprehensive petition. In any event, it took sworn testimony from the petitioner and her trial attorneys relative to the petitioner's claims. We conclude that the circumstances justify the petitioner's claims being heard on their merits.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that her guilty pleas resulted from the ineffective assistance of counsel because her counsel misadvised her about the length of her life sentence when they told her that she would serve thirty years. She asserts that her attorney's advice concerning the sentence was misleading. She claims not to have understood the actual sentence being imposed and that if she had known, she would have gone to trial. The state responds that the record supports the trial court's findings.

When a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). To satisfy the requirement of prejudice when the petitioner entered guilty pleas, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, she would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The burden was on the petitioner in the trial court to prove by clear and convincing evidence the factual allegations that would entitle her to relief. T.C.A. § 40-30-110(f) (2003). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, the petitioner now has the burden of illustrating how the evidence preponderates against those findings. However, we review the court's conclusions regarding the effectiveness of counsel de novo with no presumption of correctness because it involves a mixed question of law and fact. Id.

For parole purposes, a life sentence is computed as sixty years. See T.C.A. § 40-35-501(h)(1). At the time of the petitioner's offenses, release eligibility for a life sentence was designated by statute to occur after serving sixty percent of the sentence, i.e., thirty-six years. See T.C.A. § 40-35-501(f) (Supp. 1992). Also, a prisoner could earn sentence reduction credits for such things as good behavior and involvement in work, educational, and vocational programs. See, e.g., T.C.A. § 41-21-236. We note, by comparison, that beginning less than a month after the petitioner's offenses, although the original release eligibility date remained thirty-six years, a life sentence for murder required imprisonment for at least twenty-five years regardless of the amount of earned sentence reduction credits. See T.C.A. § 40-35-501(g)(1) (Supp. 1993).

Unquestionably, the advice the attorneys gave the petitioner was conflicting and somewhat incorrect. The petitioner was not advised that her statutory release eligibility would occur after serving thirty-six years. In reviewing the attorneys' advice in this case, we are reminded of the late Justice Joe Henry's comment that "there are few practicing attorneys, otherwise knowledgeable in criminal law, or judges at any level, who have a complete understanding of" parole procedures and related matters. Farris v. State, 535 S.W.2d 608, 613 (Tenn. 1976). However, we conclude that the petitioner was not prejudiced by the advice she received.

Initially, we note that the record reflects that all persons involved in the plea process were considering actual confinement time. At the post-conviction hearing, the petitioner was confusing the length of the sentence with the length of actual confinement. Thus, it is understandable that the trial court discredited her claim that she would not have pled guilty if she had known the sentence was effectively sixty years. As for the amount of time the petitioner was expecting to serve in confinement, the trial court computed the actual confinement to be twenty-five years, within the range that the petitioner's counsel projected. The record does not preponderate against this finding, and we conclude that the trial court properly held that the petitioner was not prejudiced by her counsel's advice.

### III. KNOWING, VOLUNTARY, AND INTELLIGENT PLEA

The petitioner contends that the record does not demonstrate that her decision to plead nolo contendere was knowing, voluntary, and intelligent relative to her relinquishing her rights and the factual basis for pleading. We conclude that her pleas were validly entered.

First, the petitioner states that the record reflects that the trial court informed her of various rights but did not tell her that she was waiving those rights in the plea process. In <u>Boykin v. Alabama</u>, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969), the Supreme Court stated that entry of a guilty plea effectively constituted a waiver of the right against compulsory self-incrimination, the right to confront one's accusers, and the right to trial by a jury. The court held that a valid waiver of such rights required the intentional relinquishment or abandonment of the rights and that such a waiver may not be presumed from a silent record. <u>Id.</u>

We believe the record reflects that the petitioner knowingly relinquished her <u>Boykin</u> rights even though the trial court did not expressly determine her understanding that she was waiving those rights. The trial court explained the <u>Boykin</u> rights to the petitioner in terms of a trial upon a plea of not guilty. It told her that her nolo contendere plea would result in her being found guilty and would allow the prosecutor to ask her questions which she would be required to answer. The petitioner stated that she understood. Although such a document is not in the record, the petitioner told the court that she had read, or had had explained to her, a petition for acceptance of a plea of nolo contendere and waiver of rights and that she had understood it. She told the trial court that she had no questions regarding the petition.

Our supreme court has noted that "it is clear under federal law 'that <u>Boykin</u> does not require separate enumeration of each right waived and separate waivers as to each [of the three rights].'" <u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting <u>Fontaine v. United States</u>, 526 F.2d 514, 516 (6th Cir. 1975)). In other words, no particular litany is necessary for constitutional validity. We believe that the nature of the proceeding, the exchange between the trial court and the petitioner, and the relatively beneficial plea agreement reflect the petitioner's knowledge and understanding that her constitutional rights relative to the trial process were not to be asserted by her any further.

The petitioner asserts that an insufficient factual basis was presented at the plea hearing relative to her guilt for the offenses for which she pled nolo contendere. She asserts that she should be entitled to withdraw her pleas. The factual basis requirement for a guilty or nolo contendere plea primarily exists to ensure that a defendant's plea is made with an understanding that the admitted conduct actually constitutes the offense that is charged. <u>See</u> <u>McCarthy v. United States</u>, 394 U.S. 459, 466-67, 89 S. Ct. 1166, 1171 (1969). In other words, the factual basis focuses upon a defendant's understanding about the applicable law in relation to the facts being admitted. <u>State v. Lord</u>, 894 S.W.2d 312, 316 (Tenn. Crim. App. 1994).

The prosecutor told the court that the petitioner aided and abetted in the murder of the victim at a market. He stated that she was not the person who stabbed the victim but that she was more than a mere person who was present. He stated that the stabbing was done by the petitioner's companion, Matney Putman. We note that upon inquiry, the petitioner's counsel advised the court that he believed the state's proof could result in a guilty verdict for first degree murder and aggravated robbery. We believe that the record sufficiently shows a factual basis relative to the murder charge. Obviously, though, there was no mention of an aggravated robbery. However, an insufficient factual

basis does not, per se, rise to the level of a constitutional violation relative to a plea being involuntary, unknowing, or not understood.  See, e.g., Powers v. State, 942 S.W.2d 551, 555 (Tenn. Crim. App. 1996).  We note that the petitioner's "Acceptance of Plea Agreement" reflects that she understood that she was pleading nolo contendere to felony murder.  She did not testify at the post-conviction hearing regarding any lack of understanding that she had relative to her plea to aggravated robbery.  We conclude that the record does not support a claim that the failure to establish a sufficient factual basis for a plea to aggravated robbery contributed in any way to the petitioner's decision to plead nolo contendere.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, JUDGE