IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2011

## WILLIS AYERS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 04-07182     Paula Skahan, Judge**

_____

**No. W2010-01634-CCA-R3-PC  - Filed June 24, 2011**

_____

The Petitioner, Willis Ayers, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief.  The Petitioner was convicted of second degree murder and facilitation of especially aggravated robbery and received an effective sentence of 36 years in the Tennessee Department of Correction.  He challenges the performance of trial counsel.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Robert Todd Mosley, Memphis, Tennessee, for the appellant, Willis Ayers.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William L. Gibbons, District Attorney General; and Bryan Anthony Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On direct appeal, this court affirmed the Petitioner's convictions.  State v. Willis Ayers, No. W2006-02441-CCA-R3-CD, 2008 WL 1968820 (Tenn. Crim. App. May 6, 2008), perm app. denied (Tenn. Oct. 27, 2008).  Although the facts of the Petitioner's case have already been discussed in this court's opinion affirming his convictions, we will provide the following factual summary to establish context for the issues before this court.

This case arose from the Petitioner's involvement in the shooting death of the victim, Charlie Jackson, Jr. On April 22, 2004, Corey Smith, David Milken, Monica Terry, and a woman named Glenda were at Ms. Terry's apartment in the Summit Park Apartment complex between 7:00 and 8:00 p.m. Charles Curtis arrived approximately one hour later. When Mr. Curtis arrived, he told everyone that he needed to obtain some money and asked Mr. Milken if he could use his cellular telephone. Mr. Curtis used Mr. Milken's cellular telephone until the cellular telephone died. Mr. Curtis then used Ms. Terry's telephone. While Mr. Curtis was on the telephone, the Petitioner, who was carrying a bookbag, arrived at the apartment. At some point, everyone went outside of the apartment. Mr. Curtis, who was still on the telephone, the Petitioner, and Mr. Milken stood at the bottom of the apartment's staircase, while Mr. Smith and Ms. Terry stood at the top of the staircase. Approximately 30 to 45 minutes later, the victim arrived. Mr. Curtis left the group and got into the passenger's seat of the victim's car. Approximately 20 minutes later, Mr. Smith watched from the top of the staircase as Mr. Milken approached the victim's car and attempted to drag the victim out of the car by the victim's neck. The Petitioner walked up to the car, pulled out a handgun, and fired once into the car, striking the victim. Mr. Milken got into the car, pushed the victim into the passenger seat, and drove away with Mr. Curtis in the backseat. The Petitioner returned to the apartment, put the handgun in his bookbag, and told Mr. Smith that he shot the victim because he thought the victim was reaching for a weapon.

The Petitioner, Mr. Curtis, and Mr. Milken were charged with felony murder and especially aggravated robbery. Mr. Milken was tried separately, while the Petitioner and Mr. Curtis were tried together. Following the presentation of the evidence, the jury acquitted the Petitioner of felony murder and convicted him of second degree murder and facilitation of especially aggravated robbery. After the Petitioner's convictions were affirmed on appeal, the Petitioner filed a timely petition for post-conviction relief. Following the filing of an amended petition, the post-conviction court held a hearing on April 26, 2010.

The proof at the evidentiary hearing consisted solely of the testimony of the Petitioner and trial counsel. The Petitioner testified that he had approximately nine or ten meetings with trial counsel. He said that each of these meetings lasted approximately 15 or 20 minutes. He said that he met with trial counsel prior to the preliminary hearing and that he told trial counsel to ask Mr. Smith, the sole eyewitness who testified at trial, several questions. He said that trial counsel would not ask the questions that the Petitioner had suggested.

The Petitioner testified that trial counsel did not give him the discovery materials provided by the State until after he had been convicted. He stated that there were documents in the discovery materials that would have been helpful for his defense. He said that trial counsel never discussed a defense strategy with him and never told the Petitioner his theory

of the case. He said that trial counsel expected that the Petitioner's case would be severed from Mr. Curtis's and that trial counsel did not really have a plan once the motion to sever was denied.

The Petitioner testified that he believed that his sentence was unlawful because the trial court enhanced his sentence using factors not found by the jury. He said that on appeal, this court upheld his sentence because trial counsel did not object to the improper use of the enhancement factors. He said that he believed that if trial counsel had done everything that he had asked him to do, then he would have had a better trial verdict.

On cross-examination, the Petitioner admitted that he had been acquitted of felony murder and especially aggravated robbery and that he had been convicted of the lesser-included offenses of second degree murder and facilitation of especially aggravated robbery. The Petitioner stated that his family hired trial counsel and that he talked with trial counsel the day before the preliminary hearing. He admitted that he did not ask trial counsel any questions about the preliminary hearing but explained that trial counsel did not ask him if he had any questions. The Petitioner admitted that he could have asked trial counsel questions but said that he felt like trial counsel "already had everything how he was going to do it." However, he stated that trial counsel should have asked Mr. Smith about a meeting that Mr. Smith had with trial counsel's paralegal. The Petitioner stated that trial counsel did not question Mr. Smith about this meeting until trial. Trial counsel's paralegal and the Petitioner's sister testified at trial that Mr. Smith came to counsel's office before the preliminary hearing and told them that the Petitioner did not shoot the victim.

The Petitioner stated that he complained to trial counsel when he believed that counsel was not doing what he should be doing. The Petitioner said that trial counsel always reassured him and told him that he would look into the Petitioner's complaints. The Petitioner stated that trial counsel told him that he would investigate the scene and take pictures of the scene. The Petitioner said that he never saw any pictures of the scene. The Petitioner stated that he also told his family about his complaints with trial counsel. He admitted that he did not tell the trial court that he had any problems with his trial counsel. He admitted that he was able to communicate with counsel during the trial and that he told counsel to ask certain questions on his behalf. He complained that counsel did not properly question the witnesses. Specifically, he stated that trial counsel did not effectively cross-examine Mr. Smith. He stated that if trial counsel had been present when Mr. Smith came to the office, then he would not have been convicted. He stated that trial counsel should have pursued Mr. Smith after counsel learned that Mr. Smith had said that the Petitioner was not involved in the shooting. The Petitioner stated that after trial, he wrote counsel numerous times but that counsel only responded on two occasions. He stated that counsel did not visit him after the trial.

Trial counsel testified that he had been an attorney for ten years; that he had prosecuted four people who had been charged with first degree murder; and that before he represented the Petitioner, he had defended two people who had been charged with first degree murder. Trial counsel testified that he met with the Petitioner "a couple of times" prior to the preliminary hearing and that he also met with the Petitioner's family prior to the preliminary hearing. He stated that he discussed the case with the Petitioner and the Petitioner's family. He stated that the Petitioner was "heavily involved" with the case and that they discussed and formulated a trial strategy. He stated that he filed several motions on the Petitioner's behalf and that he discussed the motions with the Petitioner. He said that the State provided "open file discovery" and that he copied the State's file and gave the copies to the Petitioner. He stated that he reviewed the State's discovery materials with the Petitioner and that they discussed the materials and the State's evidence against the Petitioner. He stated that the Petitioner never complained about his representation and that he believed that he had a "really good working relationship" with the Petitioner.

Trial counsel stated that he worked with an investigator on the Petitioner's case and that he took photographs of the scene. He said that Mr. Smith attempted to talk to him prior to the preliminary hearing but that he was not in the office at the time. He said that he could not find Mr. Smith after Mr. Smith came to his office and that the State even had trouble locating Mr. Smith. He said that he had his paralegal and the Petitioner's sister testify at trial about Mr. Smith's statements to them. They testified that Mr. Smith told them that the Petitioner was on the staircase with him and that the Petitioner did not participate in the shooting. He stated that he also asked Mr. Smith about the office meeting and his statements but that Mr. Smith denied visiting the office and making the statements. Trial counsel stated that at trial, he cross-examined Mr. Curtis's ex-girlfriend, who testified that Mr. Curtis told her that he had killed the victim.

On cross-examination, trial counsel stated that he and the State were trying to find Mr. Smith but that Mr. Smith could not be located until the day before the trial. He admitted that Mr. Smith's testimony was damaging to the Petitioner's case but that he attempted to argue that Mr. Smith was a co-conspirator. Trial counsel stated that he also continually renewed his motion to sever the Petitioner's case from Mr. Curtis's but that the trial court denied his motions to sever. He stated that he raised the trial court's imposition of consecutive sentences as an issue on appeal but that the appellate court upheld the Petitioner's sentence.

Following the evidentiary hearing, the post-conviction court found that the Petitioner had presented "no evidence to support a claim that [t]rial [c]ounsel failed to fully investigate the facts of the case." The Petitioner had also failed to establish that trial counsel's "failure to ask various questions of witnesses on the stand at the preliminary hearing as well as at trial" prejudiced him. The court stated that the Petitioner had presented "insufficient if any

evidence" to support his claim that he was prejudiced by trial counsel's failure to object to the court's imposition of enhancement factors. The court found that the Petitioner had failed to establish that counsel was ineffective for failing to communicate with him and for failing to meet with Mr. Smith. The court stated that trial counsel did not know that Mr. Smith was coming to his office and that trial counsel cross-examined Mr. Smith with his inconsistent statements at trial. The post-conviction court denied the petition, concluding that the Petitioner had failed to establish his allegations by clear and convincing evidence.

## ANALYSIS

### I. Unsigned and unverified petition

The State contends that the post-conviction court should have summarily dismissed the petition for post-conviction relief because the Petitioner failed to sign and verify the petition. The State urges this court to compare the Petitioner's case with that of Holton v. State, 201 S.W.3d 626 (Tenn. 2006), in which our supreme court concluded that a post-conviction court did not have the authority to consider a petition that was not signed or verified under oath by the petitioner. The Petitioner responds that his case is materially different from Holton. The Petitioner further responds that the State failed to object to the unsigned and unverified petition prior to the post-conviction hearing and that his sworn testimony at the post-conviction hearing cured any defects.

A post-conviction proceeding is initiated by the filing of a petition in which a petitioner must "include all claims known to the petitioner for granting post-conviction relief and shall verify under oath that all claims are included." Tenn. Code Ann. § 40-30-104(d). Additionally, "[t]he petition and any amended petition shall be verified under oath." Tenn. Code Ann. § 40-30-104(e). If the petitioner fails to comply with the requirements, the incomplete petition "shall be filed by the clerk, but shall be completed as set forth in an order entered in accordance with [section] 40-30-106(d)." Tenn. Code Ann. § 40-30-104(b). Section 40-30-106(d) provides that incomplete petitions filed by pro se petitioners may be amended to comply with the section requirements. If a pro se indigent petitioner files an amended petition that still fails to comply with the section requirements, the post-conviction court may appoint counsel and direct counsel to file another amended petition. Tenn. Code Ann. § 40-30-104(e). Thus, the rules provide that the petitioner should be given an opportunity to comply with the section requirements once a shortcoming is noticed, not that the post-conviction court must summarily dismiss the petition if the petition does not conform to the section requirements. See Hutcherson v. State, 75 S.W.3d 929, 931 (Tenn. Crim. App. 2001) (providing that the petitioner was entitled to an opportunity to amend his verified petition when the unverified memorandum offered in support of the petition contained all of the factual allegations).

Additionally, the Petitioner is correct that the facts in Holton are materially different from the facts in his case. In Holton, the supreme court consolidated two cases and considered "whether a post-conviction trial court has the authority to consider petitions that are filed by the Post-Conviction Defender but are not verified under oath or signed by the petitioners." Holton, 201 S.W.3d at 628. The post-conviction defenders in Holton filed the petitions as a "next friend" without the express permission of the petitioner. Id. at 635. Here, the initial petition was either filed by the Petitioner himself or filed at his direction. The Petitioner also testified under oath at the post-conviction hearing. Indeed, the State did not raise the fact that the petition was unsigned and unverified until the Petitioner appealed the denial of relief. Moreover, if the post-conviction court had been made aware that the petition was unsigned and unverified, the court could have allowed the Petitioner to verify his allegations and sign the petition prior to the evidentiary hearing. See Sexton v. State, 151 S.W.3d 525, 530 (Tenn. Crim. App. 2004) (stating that the post-conviction court could have allowed the petitioner to verify the comprehensive petition prior to the evidentiary hearing when the previous pleadings had been verified). With all of the above considerations in mind, we will review the merits of the Petitioner's appeal even though his petition was unsigned and unverified.

## II. Ineffective assistance of counsel

The Petitioner contends that trial counsel failed to communicate with him and to provide him with the discovery materials provided by the State. The Petitioner further contends that trial counsel was deficient for failing to object to the trial court's application of an enhancement factor that was not found by the jury. The Petitioner claims that the trial court's consideration of the enhancement factor as it related to the imposition of consecutive sentencing violated the United State's Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004). The State responds that the Petitioner has failed to prove that trial counsel was deficient for failing to meet with the Petitioner and provide the Petitioner with the discovery materials. The State further responds that "Blakely only applies to the enhancement of sentence length" and that consecutive sentencing was warranted based on the Petitioner's criminal history.

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his allegations by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they

relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The record reflects that trial counsel met with the Petitioner numerous times. The record further reflects that counsel spent a significant period of time preparing for trial and investigating the Petitioner's case while communicating with the Petitioner. Trial counsel stated that he investigated the Petitioner's case, discussed his trial strategy with the Petitioner, and reviewed the discovery materials with the Petitioner. We recognize that the Petitioner may have wanted to meet with trial counsel more. However, trial counsel met with the Petitioner on a number of occasions, was prepared for trial, and adequately represented the Petitioner. Accordingly, we conclude that the Petitioner has failed to establish that trial counsel was deficient for failing to communicate with him and for failing to review the discovery materials with him.

As to the Petitioner's assertion that trial counsel failed to object to the trial court's consideration of an enhancement factor as it related to the imposition of consecutive sentences, we note that this court affirmed the Petitioner's consecutive sentences on appeal. Additionally, the improper application of an enhancement factor would have affected the length of the Petitioner's sentence, not whether the trial court properly imposed consecutive sentences. The Petitioner committed the offenses prior to the 2005 amendments to the Sentencing Act and did not choose to be sentenced pursuant to the 2005 Sentencing Act. The trial court applied two enhancement factors in determining the length of the Petitioner's second degree murder sentence. The trial court considered the Petitioner's prior criminal convictions and his employment of a firearm as enhancement factors. See Tenn. Code Ann.

§ 40-35-114(1), (9). The trial court's consideration of the Petitioner's prior criminal convictions was proper; however, the trial court's consideration of his employment of a firearm as an enhancement factor was improper. See State v. Gomez, 239 S.W.3d 733, 739-41 (Tenn. 2007) (concluding that a trial court may consider a defendant's prior convictions as an enhancement factor but may not apply other enhancement factors that were not found by a jury). While counsel did not raise the trial court's error as an issue on appeal, this court concluded that any error in the trial court's application of the employment of a firearm factor was harmless. Indeed, this court acknowledged that trial counsel did not object to the application of the enhancement factor not found by a jury but concluded that the length of the Petitioner's sentence was amply supported by the Petitioner's prior criminal convictions.

Moreover, trial counsel raised the trial court's imposition of consecutive sentences as an issue on appeal. This court held that pursuant to State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), the trial court made the requisite findings and that the aggregate length of the Petitioner's sentence was justified. Thus, even if trial counsel failed to object to the trial court's imposition of consecutive sentences at trial, the Petitioner cannot establish that he was prejudiced by counsel's alleged failure. Accordingly, we conclude that the record supports the post-conviction court's denial of the petition for post-conviction relief on this ground.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-8-