IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2026

## WENDOLYN LEE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 17-03262        Chris Craft, Judge

_____

### No. W2025-00455-CCA-R3-PC
_____

Petitioner, Wendolyn Lee, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that Petitioner received the effective assistance of trial counsel and that the remainder of his claims were either waived or previously determined. The State argues that the post-conviction court lacked the authority to consider Petitioner's claims because a properly verified post-conviction petition was never filed and that Petitioner has otherwise waived consideration of his issues by failing to prepare an adequate brief. After review, we conclude that the post-conviction court had authority to consider Petitioner's claims, but Petitioner has waived consideration of his claims in this court. Accordingly, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Wendolyn Lee, Only, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Shelby County Jury convicted Petitioner of rape, statutory rape by an authority figure, and incest after hearing proof that he repeatedly raped and later impregnated his minor stepdaughter ("the victim"). At trial, Petitioner testified in his own defense, despite

strong warnings by defense counsel ("Counsel"), and embarked upon what the trial court called "the most bizarre testimony . . . that this court has heard from any defendant in its 47 years of trying cases . . . ." While on the stand, Petitioner admitted to having sex with the victim and his other stepdaughter. He claimed this occurred only after the girls turned eighteen years old, but he then admitted to being the father of the victim's young child, who was born when the victim was only sixteen years old. While testifying, Petitioner gave three different versions as to how the victim became pregnant. He first claimed a family friend artificially inseminated the victim with Petitioner's semen, then he said the victim used a discarded condom to artificially inseminate herself, and finally he said that he paid $4,500 to a woman "who deals with lesbians" to artificially inseminate the victim so she could birth a child for Petitioner and his cancer-stricken wife. At sentencing, the trial court imposed an effective sentence of twenty-two years in confinement plus 210 consecutive days for contempt of court. This court affirmed Petitioner's convictions on direct appeal in 2023, and our supreme court denied review. *See State v. Lee*, No. W2022-00626-CCA-R3-CD, 2023 WL 1956964, at *1 (Tenn. Crim. App. Feb. 13, 2023), *perm app. denied* (Tenn. June 7, 2023).

Following our denial of his direct appeal, Petitioner filed a pro se petition for post-conviction relief in August 2023. One month later, he filed what the post-conviction court construed as an amended pro se petition for post-conviction relief. Neither document was verified under oath.

In the petitions, Petitioner raised the following issues: (1) illegal sentence; (2) ineffective assistance of counsel; (3) denial of right to represent himself; (4) judicial misconduct by the trial judge; and (5) lack of territorial jurisdiction. In October 2023, the post-conviction court entered an order, finding that Petitioner had effectively waived his right to counsel and granting Petitioner's request to proceed pro se. Petitioner then filed a motion to vacate his convictions, raising the issue of prosecutorial misconduct. Specifically, Petitioner alleged that the District Attorney General conspired with an officer with the Memphis Police Department to present false testimony to the Shelby County Grand Jury to obtain the original indictments. In March 2024, the State responded to the petitions and the motion to vacate. The State agreed that "petitioner's filing meets the threshold requirements of Tenn. Code Ann. § 40-30-106," and argued that Petitioner was not entitled to post-conviction relief based on his claims.

An evidentiary hearing was held in January 2025, in which Petitioner and Counsel were the only two witnesses. The post-conviction court limited the proof to the ineffective assistance of counsel claim after the State argued that Petitioner's other claims were not cognizable or had been previously decided. Petitioner testified that Counsel was ineffective when he referred to Petitioner as "a psycho" and conceded that Petitioner was guilty of incest and statutory rape during closing arguments, arguing that he suffered

prejudice as a result. He claimed Counsel never consulted with him and that he was unaware Counsel was going to make those statements. He also argued that Counsel was wrong when he conceded in closing arguments that Petitioner admitted to incest because Petitioner was never married to the victim's mother. Petitioner admitted that he stopped communicating with Counsel after the two had an argument. Petitioner said that Counsel told him that "he hadn't been on the case long enough to even do anything" and told him he did not "know enough" about Petitioner's case to adequately defend him.

Counsel testified that he had been practicing about nineteen years at the time of Petitioner's trial and had participated in approximately eighty jury trials "in various locations." He said that he had adequate time to prepare for trial and that he went over the case with Petitioner "as much as [he] could," but he explained that his interactions with Petitioner leading up to trial were "mostly contentious . . . never really coming to an agreement on practically anything." He stated that he had trouble communicating with Petitioner all of the time he represented him. Counsel described Petitioner as "an extremely litigious individual and aggressive and prone to outbursts . . . ." He said Petitioner was never receptive to his legal advice. When asked if he was able to discuss discovery and develop a trial strategy, Counsel stated that "the best way I can describe it is if we came up with a path forward, the very next day he's going to do the opposite." He testified that his trial strategy "had been blown up in my face on purpose" after Petitioner testified. After Petitioner's took the stand, Counsel said he tried his best to minimize Petitioner's exposure at sentencing. Throughout the entire trial, Counsel said Petitioner refused to talk with him.

Counsel admitted to referring to Petitioner and the victim's mother as "psychos" during closing arguments but explained as he was questioned by Petitioner at the hearing:

> During the trial I could not trust the words that came out of your mouth ever. You were -- most of the words that came out of your mouth were either fantasies or complete fabrications. So -- and your behavior was bizarre. There was one point . . . where you got on the stand and it was like you sang an incest song or something like that. I couldn't even question you during direct testimony because [I] had no idea, nor did I trust the words that came out of your mouth would be based in reality. That's probably – and I believe there were two minor children that got pregnant – impregnated by you according to DNA. So yeah. And the two psychos referring to you and your wife meaning that my impression was that your wife was in on it.

Counsel agreed that he conceded that Petitioner was guilty of incest, and he explained that he told the jury that Petitioner was unreliable because "most if not all of the words" from Petitioner "were false" in Petitioner's testimony and their conversations. Counsel said he "had no idea what was factual" and "what was not." When asked why he conceded

- 3 -

Petitioner's guilt on the two lesser charges, Counsel addressed Petitioner and stated, "Well you got on the stand and it was obvious. Your behavior, your conduct, that song. There was what was I supposed to say – well I had no idea – I couldn't even ask you questions during your testimony." Counsel went on to say that he would have "lost credibility" with the jury if he asked them to "just ignore" Petitioner's testimony. Counsel said Petitioner's behavior during trial defeated any other option he had to defend Petitioner.

Counsel said he strongly urged Petitioner not to testify. He recalled an extensive *Momon* hearing where Counsel laid out twenty points on why Petitioner should not speak in open court. He agreed that it was his job to defend Petitioner at trial but explained to Petitioner that if he refused to accept "this realm of reality, I can only work with how you conduct yourself. I can't make you see reality." When asked if Petitioner ever objected to his representation, Counsel replied, "You said that all the time to every lawyer you've ever had."

Counsel said he told the jury Petitioner was guilty of incest because Petitioner "got on the stand and admitted it . . . ." Counsel explained that it is a very common strategy for defense attorneys to argue that a defendant is guilty of one charge but not guilty of another, and that sometimes, once the proof is heard at trial, that is the only strategy an attorney has available. Counsel said Petitioner's was one of those cases.

After the hearing, the post-conviction court issued a detailed written order denying relief. Petitioner filed a timely notice of appeal.

**Analysis**

On appeal, Petitioner claims the post-conviction court erred in denying relief, arguing: (1) the trial court did not have "legal jurisdiction" to adjudicate his claims; (2) the trial court committed fraud by altering the certified record on appeal; (3) prosecutorial misconduct; (4) judicial misconduct; (5) perjury by the State's witnesses at trial; (6) an unauthorized sentence; and (7) ineffective assistance of counsel. The State argues first that the post-conviction court lacked jurisdiction to consider Petitioner's claims, and alternatively, that Petitioner's claims are waived for inadequate briefing. For the reasons discussed below, we conclude Petitioner is not entitled to post-conviction relief.

I. Unverified Petitions

The State argues that the post-conviction court lacked the authority to consider Petitioner's claims because the original and amended petitions were unverified, meaning they did not include a sworn statement by Petitioner attesting to the veracity of his claims. The State further argues that even if we construe Petitioner's sworn testimony at the

evidentiary hearing as curing the verification problem, his testimony occurred after the statute of limitations had run, so any cure arising from his sworn testimony should be considered time barred. Petitioner filed an untimely reply brief that failed to respond substantively to the State's arguments.

Here, the State correctly observes that neither the original nor amended petition included the required sworn verification statement. *See* Tenn. Code Ann. § 40-30-104(e) ("The petition and any amended petition shall be verified under oath."). Although the State argues in its appellate brief that the post-conviction court lacked authority to consider Petitioner's claims, the State failed to object or raise the issue during the post-conviction proceedings. In fact, the State's response to the petitions acknowledged that Petitioner's "filing meets the threshold requirements of Tenn. Code Ann. § 40-30-106." Further, the post-conviction court allowed the case to proceed without identifying the defect and permitted the pro se Petitioner to give sworn testimony regarding his claims at the evidentiary hearing. On similar facts, we have repeatedly held that a merits review is warranted without regard to the timing of the evidentiary hearing. *See Sexton v. State*, 151 S.W.3d 525, 530 (Tenn. Crim. App. 2004) (holding these "circumstances justify the petitioner's claims being heard on the merits"); *Hinton v. State*, No. W2022-01135-CCA-R3-PC, 2023 WL 8525148, at *1, *4 (Tenn. Crim. App. Dec. 8, 2023) (affirming practice of allowing petition to be verified under oath at hearing when State acknowledge petitioner met statutory filing requirements and did not move for dismissal until hearing); *Watt v. State*, No. M2015-02411-CCA-R3-PC, 2016 WL 6638856, at *1, *4 (Tenn. Crim. App. Nov. 10, 2016) (allowing sworn testimony at hearing to substitute for verification when post-conviction court allowed the case to proceed without addressing error); *Timberlake v. State*, No. W2008-00037-CCA-R3-PC, 2009 WL 302294, at *1, *3 (Tenn. Crim. App. Feb. 5, 2009) (reversing summary dismissal based on missing verification where petitioner was not made aware of the problem until hearing). We see no reason to depart from that practice here.

Although we conclude that dismissal is not warranted on these facts, we—as did the *Fitts* panel—emphasize that "the better practice" for post-conviction courts and litigants "would be to ensure the mandatory language of the statute has been complied with prior to conducting a hearing." *Fitts v. State*, No. M2024-00565-CCA-R3-PC, 2025 WL 3124142, at *1, *4 (Tenn. Crim. App. Nov. 7, 2025), *perm. app. pending*.

## II. Waiver

The State seeks waiver of all issues raised in Petitioner's brief due to inadequate briefing. The State argues that "there are no citations to the record, and the appellate brief appears to be a stream of consciousness ranting about various subjects, from the district attorney general to the trial court." On direct appeal, our court described Petitioner's

briefing as "an incoherent, rambling, and salacious criticism of the trial judge and the Shelby County District Attorney General." *Lee*, 2023 WL 1956964 at *12. We describe Petitioner's briefing in this case the same way.

Our principal function as an appellate court is to review and correct errors, *State v. Mathews*, No. M2022-01210-CCA-R3-CD, 2024 WL 4039728, at *1, *7 (Tenn. Crim. App. Sept. 4, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025), and our authority "generally will extend only to those issues presented for review," Tenn. R. App. 13(b). To that end, we rely upon the parties to advance "the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (citation modified). Simply raising an issue—without legal argument, citations to legal authority, and appropriate references to the record—is not sufficient to preserve that issue for appellate review. *See Mathews*, 2024 WL 4039728 at *8. Not only should parties identify the errors they believe occurred below, but they must also show why they believe the law entitles them to appellate relief. *Id*. at *7; *see also Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (stating the appellant should identify "those issues most amenable to success on appeal and present those issues to the court supported by citation to authorities and appropriate references to the record.").

Accordingly, our Rules of Appellate Procedure require the appellant to set forth "the contentions . . . with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record relied (which may be quoted verbatim) relied on; and for each issue, a concise statement of the applicable standard of review . . . ." Tenn. R. App. P. 27(a)(7)(A)-(B). And under our court's rules, any issues raised by an appellant that "are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived." Tenn. Ct. Crim. App. R. 10(b). Absent these rules, the court would be forced "to research or construct a litigant's case or arguments" on their behalf, which is not our role as jurists. *See Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010) ("where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived"). Indeed, our role is to "call balls and strikes; [we] don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. ----, 146 S.Ct. 410, 412 (2025) (per curiam) (citation modified).

We acknowledge that Petitioner has chosen to act pro se, as is his right. Despite this, Petitioner is not entitled to avoid the briefing requirements set forth under our rules. *See* Tenn. R. App. P. 27(a); Tenn. Ct. Crim. App. R. 10(b); *see also Matthews*, 2024 WL 4039728 at *1 (concluding pro se appellant waived issue for review because his briefing required the court to "first construct developed arguments from his conclusory statements and make assumptions about the extent of his requests for relief"). Here, Petitioner's briefing does not include appropriate citations to the record or meaningful legal analysis,

and it is inconsistent in form and style, leading to difficulty in deciphering where his briefing ends and the attachments to his brief begin. For us to reach the merits, we would be forced to develop Petitioner's arguments for him. This we will not do. *See Sneed*, 301 S.W.3d at 615. Because Petitioner's brief does not comply with Tennessee Rule of Appellate Procedure 27(a)(7), we conclude that he has waived appellate consideration of the issues presented in his brief.

Further, Petitioner's claims of judicial misconduct, prosecutorial misconduct, illegal sentencing, and false testimony by the State's witnesses at trial could each have been raised on direct appeal and are thus waived for purposes of post-conviction relief. *See* Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ."). In fact, Petitioner referenced the substance of these claims during his own testimony at trial, in his briefing on direct appeal, and in several frivolous filings in federal court, *see, e.g.*, *Lee v. Craft*, No. 22-02441-SHM-tmp, 2023 WL 2588187, at *1 (W.D. Tenn. Mar. 21, 2023) (listing prior filings that had been sanctioned). Additionally, Petitioner's challenge to the trial court's territorial jurisdiction was litigated and decided on direct appeal. *See Lee*, 2023 WL 1956964 at *13-14 (concluding proof was sufficient beyond reasonable doubt that the criminal court had territorial jurisdiction over each of the offenses for which Defendant was convicted). Because we have already decided this issue on the merits, Petitioner is not entitled to revisit this claim now. *See* Tenn. Code Ann. § 40-30-106(f), (h) (providing that a ground for relief shall be dismissed if it has been "previously determined," meaning "a court of competent jurisdiction has ruled on the merits after a full and fair hearing"). Accordingly, Petitioner has failed to establish that the post-conviction court erred in denying his petition for post-conviction relief.

## Conclusion

Accordingly, we affirm the judgment of the post-conviction court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

- 7 -