# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 12, 2012

## DAVIDSON TAYLOR v. STATE OF TENNESSEE

**Appeal from the Shelby County Criminal Court**
**No. 04-01632     W. Otis Higgs, Jr., Judge**

_____

**No. W2011-00979-CCA-R3-PC  - Filed June 29, 2012**

_____

Davidson Taylor ("the Petitioner") filed for post-conviction relief from his convictions for evading arrest in a motor vehicle and driving under the influence. In his petition, he alleged that he received ineffective assistance of counsel at trial. After an evidentiary hearing, the post-conviction court denied the petition. The Petitioner appeals, arguing that the post-conviction court erred in denying his petition. On appeal, the Petitioner asserts that his trial counsel: (1) failed to advise the Petitioner properly regarding his right to testify; and (2) failed to request a continuance once trial counsel learned of a death in his family. After a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Ryan Wiley (on appeal) and James Allison (at hearing), Memphis, Tennessee, for the appellant, Davidson Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Steve Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Background Facts and Procedure

On August 24, 2005, a Shelby County jury convicted the Petitioner of felony evading arrest in a motor vehicle and driving under the influence ("DUI"). For the evading arrest

conviction, the Petitioner received a one-year suspended sentence. For the DUI conviction, the Petitioner was sentenced to eleven months and twenty-nine days, with forty-eight hours to be served in confinement. On appeal, this Court affirmed the convictions. See State v. Davidson M. Taylor, No. W2006-00543-CCA-R3-CD, 2007 WL 3026374 (Tenn. Crim. App. Oct. 12, 2007), perm. app. denied, (Tenn. March 3, 2008).

The Petitioner filed for post-conviction relief on March 2, 2009, alleging ineffective assistance of counsel. The post-conviction court held an evidentiary hearing on September 30, 2010, and November 4, 2010. The post-conviction court entered a written order denying the petition on March 25, 2011. The Petitioner timely appeals, arguing that the post-conviction court erred when it denied his claim of ineffective assistance of counsel.

*Evidence at Trial*

On direct appeal, this Court set forth the following facts underlying the Petitioner's[1] convictions:

> Around midnight on May 2, 2003, John Tremmel, an off-duty deputy with the Shelby County Sheriff's Department, was traveling home on Interstate 40 after completing his shift.[2] As he approached the Austin Peay exit, he noticed several cars making abrupt lane changes. As he neared these cars, he determined that they were swerving to avoid an extremely slow-moving Grand Marquis, which was being driven erratically and was "going from one side of the [three-lane] highway to the other." Tremmel was not prepared to stop the vehicle, as he was not in uniform at the time, and he was driving an unmarked Sheriff's department vehicle. Nonetheless, Tremmel continued to follow the Grand Marquis. As the car approached the Summer Avenue exit, it came to a complete stop in the middle of the roadway. According to Tremmel, other vehicles traveling on the roadway were forced to swerve around the stopped car in order to avoid hitting it. After remaining stationary for ten to fifteen seconds, the vehicle drove away and resumed travel on the interstate, still driving erratically. During this time, Tremmel was able to arm himself with his service weapon, put on his bulletproof vest, and place his badge around his neck.

---

[1] The Petitioner is referred to as "the Appellant" in the cited portions of the direct appeal opinion.

[2] Tremmel testified that he was a detective in the Narcotics Division of the Shelby County Sheriff's Department.

Once Tremmel was properly prepared to stop the car, he activated his emergency equipment, including both lights and sirens. Although Tremmel activated his emergency equipment just past the Walnut Grove exit, the Marquis continued on until it reached the Nonconnah exit. After taking this exit, the driver of the Marquis stopped the car straddling the line between the emergency lane and the lane of traffic, creating a traffic risk for drivers exiting on the ramp who could not see the parked car. Tremmel observed the driver of the Marquis emerge from the car and noted that he had difficulty standing and walking. As Tremmel approached the driver, later identified as the Appellant, he also noticed that the Appellant smelled of alcohol, that his eyes were watery and bloodshot, and that his speech was slurred. The Appellant informed Tremmel that he had been to an office party.

After the Appellant was stopped, Tremmel requested that a "Metro DUI officer" be dispatched to the scene. In the interim, Tremmel obtained the Appellant's driver's license and attempted to keep the Appellant occupied by talking with him until the requested DUI officer arrived. After approximately ten minutes, the Appellant became frustrated and returned to his car. Despite Tremmel's instruction to stop, the Appellant proceeded to drive away, and Tremmel did not believe that it was safe to attempt to stop the Appellant under the circumstances. Rather, Tremmel followed the Appellant and alerted dispatch to the situation. As the Appellant turned onto Ridgeline Road, Tremmel realized that the Appellant was proceeding to the address listed on his driver's license. The Appellant parked near his residence, got out of the car, and walked toward his house. At that point, Tremmel exited his vehicle and handcuffed the Appellant. Minutes later, other officers arrived on the scene to assist.

Sergeant Davis, the dispatched "DUI tech," administered several field sobriety tests to the Appellant, all of which the Appellant was unable to successfully complete. According to Davis, the Appellant had problems even paying attention to the instructions for completion of the tests. Based upon his inability to perform various field sobriety tests, which were videotaped, Davis determined that the Appellant was extremely impaired.

Id. at *1-2 (footnote in original).

Additionally, the defense proffered the testimony of the Petitioner's wife, Mary Lee Taylor. On direct examination, trial counsel asked Taylor whether she had ever seen the Petitioner intoxicated, and she replied that she had not. The State argued that the defense had

-3-

opened the door to the Petitioner's prior conviction for DUI in 1981. The trial court determined that the prejudicial effect of the Petitioner's prior DUI conviction substantially outweighed its probative value and refused its admission. However, the trial court also struck Taylor's testimony in its entirety. On direct appeal, we affirmed the trial court's decision. See id. at *2-5 (Smith, J., concurring). Thus, the Petitioner did not admit any evidence on his behalf. Following a Momon hearing, he elected not to testify.

*Evidence at Post-Conviction Hearing*

Both the Petitioner and trial counsel testified at the post-conviction hearing. The Petitioner stated that the defense's initial strategy was for him not to testify at trial because of his prior DUI conviction. The Petitioner, however, believed that trial counsel made a "mistake" in examining Taylor, who was the defense's only proffered witness. After Taylor's testimony was stricken, the Petitioner thought that he should have taken the stand to "defend [himself]" and "to clarify any questions that the jury. . . might have."[3]

The Petitioner stated that he then asked trial counsel whether he should testify and that trial counsel instructed him not to testify. According to the Petitioner, trial counsel's advice in this regard stemmed from the fact that, at some point during the trial, trial counsel learned that his brother-in-law had been killed while serving in Iraq. In his testimony at the post-conviction hearing, the Petitioner was uncertain about precisely when trial counsel received this news. The Petitioner believed the news came on the second day of trial and, at different times, stated that the news came before the State closed its proof and before Taylor testified.

The Petitioner maintained, however, that trial counsel learned of his brother-in-law's death before the Petitioner and trial counsel finally decided whether he should testify. The Petitioner said that he thought trial counsel had been a "competent" and "good attorney" and acknowledged that trial counsel discussed strategy and tactics with him. Yet, the Petitioner believed that, "[a]fter the death of his brother-in-law, [trial counsel] just seemed to come apart all together. He didn't act himself, and he acted very, very nervous and out of it." Trial counsel's demeanor became "very disgruntled . . . like he had actually seen a ghost." Trial counsel told the Petitioner that he was "totally devastated" and "just need[ed] this [trial] to be over with." The Petitioner said that trial counsel asked him to plead guilty, but he declined to do so because the trial had started and the Petitioner believed that he had "a good chance of proving [his] innocence." The Petitioner claimed that he asked trial counsel about the possibility of a continuance, but trial counsel told him that he "just need[ed] this to be over . . . right now, or as soon as possible."

---

[3] The Petitioner did not elaborate on what his trial testimony would have been had he testified.

On cross-examination, the Petitioner said that in deciding whether to testify, he "was really open for whatever my attorney advised me to do under the circumstances." The Petitioner claimed, however, that the decision was taken out of his hands by trial counsel's statement that he needed the trial to conclude as soon as possible. The Petitioner elaborated that trial counsel looked at his watch as he made this statement. The Petitioner said that he then asked Taylor whether he should testify, and she told him to follow trial counsel's advice and not testify. The Petitioner recalled testifying at his Momon hearing and telling the trial court that he voluntarily decided not to testify at trial. The Petitioner said that he did so based upon Taylor's advice to heed trial counsel's advice.

Trial counsel testified that he had been licensed to practice law since 2000 and that his practice was devoted to criminal defense. Trial counsel stated that he frequently met with the Petitioner and that they "talked extensively" about the case. Trial counsel advised the Petitioner to plead guilty, but after the Petitioner declined, trial counsel prepared for trial. Trial counsel had "strong reservations" about whether the Petitioner should testify and steadfastly advised him not to do so. Trial counsel was aware of the Petitioner's prior DUI conviction and "wanted to be careful not to open the door" to the conviction's admissibility.

The trial transcript, which was admitted into evidence, reflects that the Petitioner's trial began on August 22, 2005, with voir dire, jury selection, reading of the indictment, and opening statements occurring on that day. On August 23, 2005, the State put forth its proof and rested. On that same day, the defense put forth its proof, conducted the Momon hearing, and rested. On August 24, 2005, closing arguments took place, and the jury rendered a verdict. Trial counsel recalled that he was notified of his brother-in-law's death at approximately 5:15 a.m. on August 24, 2005. He remembered that he tried to talk about his brother-in-law's death during closing arguments in a manner that would be advantageous to the Petitioner but was met with an objection.[4]

Trial counsel denied that he was distraught over his brother-in-law's death at the time that he advised the Petitioner not to testify. Trial counsel stated, "[T]hat couldn't have happened because I did not receive that news until after the proof had closed, period." He acknowledged that he may have reassessed whether the Petitioner should testify in light of Taylor's excluded testimony but maintained that he advised the Petitioner not to testify because of the possibility that the Petitioner's prior DUI conviction could be used for impeachment purposes. Trial counsel did not recall the Petitioner telling him that he wanted to testify or contesting the decision not to testify. Trial counsel also relayed that he had

---

[4] As reflected in the trial transcript, trial counsel told the jury, "I got a call this morning that someone in my family who is serving in Iraq was killed." The trial court sustained the State's objection on the ground of relevance.

"never worn a watch" and that he had not "owned a watch in over twenty years." Trial counsel recalled questioning the Petitioner "very extensively" during the Momon hearing about his decision whether to testify and that "unequivocally, at all crossroads" the Petitioner "said he did not desire to testify." Trial counsel noted that the Petitioner's prior DUI conviction was not introduced as evidence at trial.

After hearing this evidence, the post-conviction court denied relief. The court found that the Petitioner had failed to show either deficient performance or prejudice to his case. First, the post-conviction court reviewed the Petitioner's claim that trial counsel refused to allow the Petitioner to testify at trial. The court found that the Petitioner's testimony at the post-conviction hearing directly contradicted his allegation in the petition, which stated that the initial trial strategy had been for the Petitioner to testify. The post-conviction court found that the Petitioner's testimony was not credible and that trial counsel's testimony, as well as the trial transcript, revealed that trial counsel did not learn of his brother-in-law's death until the morning after the defense had rested. The post-conviction court also found that the trial transcript indicated that the Petitioner knowingly and voluntarily waived his right to testify.

Second, the post-conviction court reviewed the Petitioner's claim that trial counsel should have requested a continuance after learning of his brother-in-law's death. The court did not find credible the Petitioner's claim that he asked trial counsel to request a continuance during the defense's proof and that trial counsel replied that "I just need this to be over . . . right now or as soon as possible." Furthermore, the post-conviction court found no evidence of any reason that would have necessitated or justified a continuance in the Petitioner's trial.

The Petitioner appeals, arguing that the post-conviction court erred in denying his claim of ineffective assistance of counsel. From our review of the Petitioner's brief, we glean the following specific issues:

(1) Whether trial counsel failed to advise the Petitioner adequately regarding his right to testify; and

(2) Whether trial counsel failed to preserve the Petitioner's right to a fair trial by seeking a continuance after learning of his brother-in-law's death.

Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of

the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

## Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[5] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106,

---

[5] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688)).  Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance.  It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence.  Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)).  When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time."  Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006)  (citing Strickland, 466 U.S. at 689).  Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689).  We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result.  Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991).  We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation."  Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different."  Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome."  Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)).  "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland."  Id.

Turning to the Petitioner's specific complaints, he first argues that trial counsel inadequately advised him regarding his decision not to testify.  At the post-conviction hearing, the Petitioner testified that the defense's original strategy was for him not to testify because of his prior DUI conviction.  The Petitioner asserted that after Taylor's testimony

-8-

was stricken from the record, he wanted to testify, but trial counsel refused to let him do so. The Petitioner claimed that trial counsel's refusal was because he had learned of a death in his family and wanted the trial to be over with as soon as possible. Trial counsel testified that he consistently advised the Petitioner not to testify because the Petitioner's prior DUI conviction could be used to impeach him. Trial counsel also testified that he did not learn of his brother-in-law's death until after the Petitioner had waived his right to testify.

The post-conviction court found that the Petitioner was not a credible witness. On the other hand, the court found that trial counsel's testimony was credible and that the trial transcript supported trial counsel's version of events. Moreover, the post-conviction court found that the trial transcript revealed a knowing and voluntary waiver by the Petitioner of his right to testify. Thus, the post-conviction court concluded that the Petitioner had failed to show either deficient performance or prejudice to his case.

We have reviewed the record and conclude that the evidence does not preponderate against the post-conviction court's findings. In light of the post-conviction court's finding that the Petitioner was not a credible witness, the evidence clearly shows that the decision whether to testify was a strategic decision made by the Petitioner absent any influence from the family tragedy that befell trial counsel. Because this Court will not second-guess adequately informed strategic decisions, the Petitioner has failed to show that trial counsel performed deficiently. See Cooper, 847 S.W.2d at 528. Additionally, we have reviewed the transcript of the Petitioner's Momon hearing and agree with the post-conviction court's finding that the Petitioner voluntarily and knowingly waived his right to testify. Thus, the Petitioner has also failed to show prejudice to his case.[6] Accordingly, the Petitioner is not entitled to relief on this issue.

The Petitioner also asserts that trial counsel performed ineffectively by failing to request a continuance once he learned of his brother-in-law's death. In its findings, the post-conviction court reiterated that the Petitioner's testimony was not credible. Furthermore, the post-conviction court found no evidence of any reason that would have necessitated or justified a continuance in the Petitioner's trial. Having reviewed the record, we agree with the post-conviction court's assessment and conclude that the Petitioner has not proven either deficient performance or prejudice to his case. Consequently, the Petitioner is not entitled to relief on this issue.

_____

[6] Moreover, the Petitioner provided no testimony at the post-conviction hearing regarding what his trial testimony would have been. Thus, we are left to speculate as to how the Petitioner's testimony may have affected the outcome of his trial. See Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court.


_____
JEFFREY S. BIVINS, JUDGE