# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 2, 2012

## NATHANIEL RICHARDSON v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Shelby County
### No. 05-04653     J. Robert Carter, Jr., Judge

### No. W2011-01793-CCA-R3-PC  - Filed December 19, 2012

Nathaniel Richardson ("the Petitioner") entered a best interest plea to second degree murder and received a sentence of twenty years. The Petitioner subsequently filed for post-conviction relief, which the post-conviction court denied following an evidentiary hearing. Upon our thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Criminal Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

James Thomas, Memphis, Tennessee, for the appellant, Nathaniel Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy Weirich, District Attorney General; and Betsy Weintraub, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Shelby County Grand Jury indicted the Petitioner on July 14, 2005, for first degree murder. The Petitioner filed a motion to suppress evidence obtained as a result of a search of a Chevrolet Lumina. Following an evidentiary hearing, the trial court denied the Petitioner's motion. This Court recited the following factual and procedural history on direct appeal:

[T]he trial court had several hearings in early 2008 to determine [the Petitioner]'s competency to stand trial. [The Petitioner] was evaluated by multiple doctors prior to the hearing and had spent some time as a patient in a mental health facility prior to the hearings. At least three of the doctors who evaluated [the Petitioner] reported that [the Petitioner] was "malingering" or feigning mental illness. One of the doctors reported that [the Petitioner] was depressed and "phase[d] in and out of competence" but could return to competence with treatment. The majority of the doctors concluded, however, that [the Petitioner] exhibited some form of mental illness but was competent to stand trial at that time. The trial court ultimately determined that [the Petitioner] was competent.

In July of 2008, [the Petitioner] filed a petition to enter a guilty plea. At the guilty plea hearing, [the Petitioner] agreed to plead guilty to second degree murder in exchange for a twenty-year sentence. At the guilty plea hearing, counsel for the State informed the trial court that, had the case gone to trial, the proof would have established that:

> [O]n September 9th, 2004, Kenneth Miller, Jr. was found inside a vacant house on 869 North Third Street.
>
> Homicide began investigating the case. Mr. Miller was the victim of a stab wound. He suffered numerous stab wounds, and then after dying, his body was burned. This did not happen at the location of the abandoned house, but he was transported there after death.
>
> At that point, officers were able to investigate the case; they began talking to witnesses and friends of the victim. They came upon a person they now know to be [the Petitioner] who was the last known person to see the victim alive. They were able to establish that he was the last person to see him alive.
>
> Through their investigation, they developed enough evidence for a search warrant. They executed that search warrant on his vehicle. When they went into his vehicle, in the trunk of his vehicle, they found what appeared to be two box cutters and a knife with blood on them. That did not turn out to be the case. There was no blood on them. They were all clean. They were actually – it was actually paint.

-2-

They also found a T-shirt and jeans that did have blood on them, and those came back to the victim through DNA analysis that was done days later. Based on the knives, based on the clothing, based on a third factor – that being a gas can in the back of the trunk along with accelerant on the T-shirt and jeans, the state had a circumstantial case to go forward with the fact that [the Petitioner] was, in fact, the one that last saw the victim, . . . , and did participate in his killing.

The trial court accepted the guilty plea and the parties agreed to reserve the following certified questions for appeal:

1) Whether the trial court erred by denying the [the Petitioner's] motion to suppress all the evidence taken from the trunk of the car that was seized by the police on September 13, 2004? Whether the seizure of the car from the parking lot where [the Petitioner] worked in the absence of a search warrant violated the U.S. Const. amend. IV and amend. XIV and Art. 1 § 7 and § 8 of the Tennessee Constitution and in violation of Rule 41 of the Tennessee Rules of Criminal Procedure; thereby[] requiring that the evidence taken from the trunk be suppressed? A search warrant was later signed on September 15, 2004[,] and the vehicle was searched.

2) Whether the trial court erred by determining that [the Petitioner] was legally competent to stand trial.

State v. Nathaniel Richardson, No. W2008-01652-CCA-R3-CD, 2010 WL 481216, at *3-4 (Tenn. Crim. App. Feb. 11, 2010), perm. app. denied (Tenn. Aug. 25, 2010).

On appeal, this Court affirmed the trial court's decision to deny the Petitioner's motion to suppress. Id. at *5. As to the trial court's determination that the Petitioner was competent to stand trial, this Court held that the question was not appropriate to review as a certified question. Id. This Court stated:

For a question to be dispositive we "must either affirm the judgment or reverse and dismiss. A question is never dispositive when we might reverse and remand . . . if we . . . decided the question on its merits and found in favor of the defendant." State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Further, a question regarding suppression of the evidence is not

dispositive if other incriminating evidence exists in the record outside the scope of that question. State v. Dailey, 235 S.W.3d 131, 135 (Tenn. 2007).

In State v. Bailey, 213 S.W.3d 907 (Tenn. Crim. App. 2006), this Court examined the issue of a defendant's competency in the context of a certified question and determined that the resolution of the issue would not result in a final disposition of the case because, even if the court determined that the trial court erred, the result would be to remand the matter to the trial court. Id. at 912. Thus, we determined that this issue was not dispositive and that the court was without jurisdiction to make a determination on the matter. The case herein is akin to Bailey. A determination of incompetence would not lead to a dismissal of the charges against [the Petitioner]. This question was not properly certified. Accordingly, we are without jurisdiction to review this issue on appeal.

Id. at *5-6.

Following the direct appeal, the Petitioner filed for post-conviction relief alleging ineffective assistance of counsel and asserting that his plea was constitutionally invalid. As his bases for ineffective assistance, he asserted in his amended petition that trial counsel failed to have the Petitioner reevaluated prior to his plea and that trial counsel failed to ensure that all constitutional requirements associated with a guilty plea were followed during the Petitioner's plea hearing. At the post-conviction hearing, the Petitioner's counsel stated, "But that's the basis, that limited question, is the basis of this post conviction hearing, whether or not Mr. Richardson was competent to stand trial. In that, was counsel ineffective for not having him reevaluated before the guilty plea."

The Petitioner proceeded with his proof and called the Petitioner's counsel at trial ("trial counsel") to testify. Trial counsel stated that she had represented at least one hundred individuals in murder cases over the course of her career. Her initial observations of the Petitioner were as follows:

I noticed that [the Petitioner] was slow in the preliminary hearing stages. We do our preliminary searches for medical records, even at the General Sessions point, and he had told me, and his mother had told me, that he was in CDC classes and I just made sure that I took extra special time down in General Sessions.

Trial counsel could not recall whether the Petitioner received a mental evaluation while the case was in General Sessions. However, following the Petitioner's indictment, Dr. John Hutson completed a mental evaluation on the Petitioner and found the Petitioner

competent to stand trial. Approximately a year later, Dr. Hutson completed a second mental evaluation and, this time, found the Petitioner to be incompetent. Trial counsel explained the protocol following an incompetency finding:

> Well, we usually have to send him to a medical mental health facility and the doctors evaluate him and they actually do what I think is called competency training where through counseling, medication, and other procedures, they try to see if they can get this client to actually become competent.

Trial counsel recalled that at some point the Petitioner was diagnosed with "major depressive disorder, single episode, severe, without psychotic features, borderline intellectual functioning," and "seizure disorder." In March 2008, the Petitioner again was found to be competent. Trial counsel remembered spending "a lot" of time with the Petitioner and assigned her "mitigation specialist on the case to also make regular visits to [the Petitioner] so that we could make sure that we monitored his mental and physical health." When asked about the Petitioner's understanding of the criminal process near the time of his plea, trial counsel responded,

> Well, it was kind of difficult to tell. On the day of the guilty plea, he told me that he understood. I went to great lengths to make sure that I explained everything to him slowly. Any questions that he had, I would answer them. I made sure that, you know, he was aware of the rights to go to trial. One thing he consistently said was that he did not want to go trial.

Trial counsel agreed that she explained to the Petitioner and believed he understood the fact that he was indicted for first degree murder with a possible sentence of life imprisonment. She also agreed that, despite the Petitioner's apparent understanding of his charge and potential sentence, she and the appellate attorney nevertheless decided to challenge the trial court's finding that the Petitioner was competent. As her reason, she stated, "I could only go by [the Petitioner's] responses that he understood, and I guess that's kind of an awkward situation, because if he really doesn't understand, he's the only source that I can get that information from. I believe that he understood."

Trial counsel acknowledged the passage of time from a doctor's finding of competency of the Petitioner in March, to the trial court's competency finding in May, and finally to the Petitioner's plea in July. However, she believed that the Petitioner was under the care of a doctor either the day of or shortly before his plea.

On cross-examination, the State entered the trial court's order of competency into evidence. Trial counsel read from the order that "Dr. John Hutson, a clinical psychologist,

testified the [Petitioner] feigned cognitive difficulties which hindered [Dr. Hutson's] assessment of [the Petitioner]. According to Dr. Hutson, [the Petitioner] started realizing the benefits of malingering between 1987 and 1990, during which period, [the Petitoner] began receiving a social security check for his mental payments."[1] She also read that, according to Dr. Hutson, "the [Petitioner's] malingering improved over two years he ha[d] observed [the Petitioner]." Trial counsel agreed that a clinical social worker, Deborah Nichols, also found the Petitioner to be malingering and competent following an examination.

Trial counsel acknowledged that the trial court, on February 7, 2008, held an additional competency hearing and that Dr. Ronnie Stout testified that the Petitioner needed "competency training." Dr. Stout returned on April 18, 2008, and stated that he then found the Petitioner to be competent. Thereafter, the trial court entered an order on May 7, 2008, that found that the Petitioner was competent to stand trial.

Trial counsel agreed that the Petitioner clearly expressed that he did not wish to go to trial. Trial counsel received an offer from the State for second degree murder with a sentence of twenty years. The Petitioner entered a best interest plea because he wished to maintain his innocence but believed it best to accept the State's offer. Trial counsel maintained that the Petitioner understood the ramifications of entering a best interest plea.

Trial counsel read a letter to the trial court dated March 4, 2008 from Dr. Larry D. Southerd of the Middle Tennessee Mental Health Institute which stated, "After completion of the present competency evaluation the staff is of the opinion that [the Petitioner's] condition is such that he is capable of adequately assisting his defense in a court of law." Trial counsel did not believe that she could do anything more regarding the Petitioner's competency because, once the trial court found the Petitioner competent, the Petitioner had to proceed to trial or to enter a plea.

Prior to entering his plea, the Petitioner expressed to trial counsel that he understood the rights he was waiving, such as the right to trial. Trial counsel also witnessed the trial court explain to the Petitioner his rights and the Petitioner indicate that he understood those rights. The post-conviction court asked whether trial counsel conducted a traditional investigation of this case, and trial counsel responded that she "went beyond a traditional investigation."

David Zak testified that he became the prosecutor on the Petitioner's case after the Petitioner was indicted. He was counsel for the State at the time that the trial court found the Petitioner to be competent and when the Petitioner entered his plea. Zak verified that he signed the judgment order which included both certified questions for appeal. When asked

---

[1] According to the order of the trial court, Dr. Hutson testified at a hearing on January 31, 2008.

whether he had reservations about the Petitioner's competency when he entered his plea, Zak stated,

No, there was nothing in my mind that thought he was not competent or else I would not have allowed the plea to go through. And [trial counsel] wouldn't have either. I mean I had been with the [Petitioner] for months. [Trial counsel] had been with him for years. We had a hearing at one point where it became apparent to the State that his entire family used his competency as a shield and a sword to get medical benefits and money and that's – it was a family trick, and he was caught in the malingering status, and when they found he was malingering, then it was okay for him to plead guilty.

On cross-examination, Zak testified to the following regarding trial counsel's representation of the Petitioner:

[Trial counsel] did everything she could for her client. The case itself was based on DNA and photographs and her client was going to be found guilty of murder first. She was able to convince me that the facts and nature and circumstantial evidence in this case, that there were other people that did it with him, and based on – I'm talking weeks, months, of negotiation, she finally proved to me that murder second was justice, and that's what we did.

The Petitioner testified that he took medication daily for "seeing things, hearing voices, depression, . . . [his] nerves," and seizures. At the time that he testified, he had not yet taken his medication for that day. Post-conviction counsel asked the Petitioner whether he had heard voices that day, and the Petitioner responded, "They comes and goes [sic]" but agreed that he understood the questions being asked of him. He stated that his medication did not "stop the voices and seeing things." Post-conviction counsel asked the post-conviction court "if it could become an issue on appeal if the . . . Petitioner has not been given his medication today and is currently or has today been hearing voices." The post-conviction court responded, "Well, we're going to take him at his word, he says he understands and we're going to move forward."

The Petitioner remembered entering a plea and stated that he had eleven years, five months, and six days remaining in his sentence. He acknowledged that, if he received relief, he would be facing a first degree murder charge again with a potential life sentence. He testified that he did "[n]ot really" understand the circumstances surrounding his plea and that he did not know why he told trial counsel and the trial court that he did understand. He was taking medication at the time of his plea and confirmed that he took his medication on the day of the plea. The Petitioner denied ever telling trial counsel that he did not want to go to trial. Later, he stated that he did not remember telling trial counsel that he did not want to

go to trial and denied telling her that he wished to go to trial. He stated, "I can't remember that day, but I know that I had signed for some time." He did remember that he was able to enter a plea but still maintain his innocence by entering a best interest plea.

The post-conviction court considered the Petitioner's ineffective assistance of counsel claim as the sole issue before the court, stating, "[The Petitioner] maintains that he received ineffective assistance of counsel, which would render his guilty plea invalid. The Petitioner does not specifically address the voluntariness of the guilty plea. Rather, he states only that his attorney was ineffective." The court noted, "It is unclear what, if anything, that [the Petitioner] expected or now expects for his trial counsel to have done." It also noted that many of the reports regarding the Petitioner's competency found the Petitioner to be "malingering." The post-conviction court denied the Petitioner relief, holding that the Petitioner failed to establish that trial counsel's performance was deficient or that the Petitioner suffered prejudice as a result of such deficient performance. The Petitioner now appeals, arguing that the Petitioner's plea was constitutionally invalid. Additionally, the Petitioner contends that "trial counsel should have known that the issue of competency was not dispositive of the case [for purposes of a certified question] and was ineffective for allowing [the Petitioner] to . . . plead guilty under the false understanding that the issue had merit."

## Analysis

### Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Validity of the Plea*

The Petitioner asserts on appeal that his plea was constitutionally invalid. In his appellate brief, he notes that the State agreed to certifying the following question for review on appeal: "[w]hether the trial court erred by determining that [the Petitioner] was legally competent to stand trial." Later, on direct appeal, the State argued that the issue of competency was not a dispositive issue, and this Court agreed. Nathaniel Richardson, 2010 WL 481216, at *5-6. Thus, the Petitioner contends that "such a contradictory position on the State's behalf should be seen as a coercive measure that got the [Petitioner] to enter into [a] plea that was not knowing involuntary [sic]." The post-conviction court made no findings regarding the validity of the Petitioner's plea, stating that the Petitioner did not address the issue separate from his ineffective assistance of counsel claim. The State, therefore, contends that the Petitioner has waived appellate review of this issue. The Petitioner did raise the validity of his plea in his pro se petition for post-conviction relief which was incorporated into his amended petition for post-conviction relief. Thus, we will address the validity of his plea.

To be valid, a plea must be entered knowingly, voluntarily, and intelligently. See Boykin v. Alabama, 395 U.S. 238, 242-44 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by Tenn. R. of Crim. P. 37(b) and Tenn. R. of App. P. 3(b). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (citing Boykin, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty, Jaco v. State, 120 S.W.3d 828, 831 (Tenn. 2003) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In Mackey, 553 S.W.2d at 341, our supreme court set forth the procedure that a trial court should follow when accepting a plea in order to ensure that a defendant's plea is knowing, voluntary, and intelligent. See also Tenn. R. Crim. P. 11(b). A trial court must "substantially" comply with this procedure. State v. Newsome, 778 S.W.2d 34, 38 (Tenn. 1989).

Initially, we note that the Petitioner has failed to include a transcript of his plea hearing in the record before this Court. Therefore, we cannot review discussions at the hearing regarding the Petitioner's plea or whether constitutional safeguards were implemented. Additionally, the Petitioner did not testify at the post-conviction hearing that the State "coerced" him to enter his plea, nor did he present any other proof to establish that his plea was the product of coercion.

Moreover, trial counsel testified at the post-conviction hearing that the Petitioner clearly expressed his desire to avoid going to trial. Trial counsel believed that the Petitioner understood the ramifications of entering a best interest plea, and the prosecutor also testified that the Petitioner appeared competent to enter a plea. Thus, because of the omission of the

plea hearing transcript and lack of proof at the post-conviction hearing, the Petitioner has failed to establish that his plea was the product of coercion, rendering it invalid. Accordingly, the Petitioner is not entitled to post-conviction relief on this basis.

*Ineffective Assistance of Counsel*

The Petitioner also asserts that he was denied effective assistance of counsel. At the post-conviction hearing, the Petitioner argued that trial counsel was ineffective for not having the Petitioner reevaluated prior to his plea. Now, the Petitioner's theory for ineffective assistance is that "trial counsel should have known that the issue of competency was not dispositive of the case and was ineffective for allowing [the Petitioner] to . . . plead guilty under the false understanding that the issue had merit." Thus, the Petitioner now contends that trial counsel gave the Petitioner "erroneous advice." This theory for relief differs substantially from his theory at the post-conviction hearing or his numerous grounds of ineffective assistance of counsel raised in his petition for post-conviction relief. This Court has held that "an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal." State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001) (citation omitted). Put another way, "[i]t is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court." State v. Adkisson, 899 S.W.2d 626, 635-36 (Tenn. Crim. App. 1994). Accordingly, the Petitioner has waived appellate review of this issue.

## CONCLUSION

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE

-10-