# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 3, 2014

## RICKY FRITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-06733     Chris Craft, Judge**

---

**No. W2013-02435-CCA-R3-PC  -  Filed December 10, 2014**

---

The Petitioner, Ricky Frith, appeals the denial of post-conviction relief, arguing that he received ineffective assistance of counsel based upon trial counsel's failure to: (1) adequately communicate, investigate, and prepare for trial by obtaining "exonerating records"; (2) raise a Fourth Amendment challenge to the Petitioner's illegal arrest; (3) subpoena the officer who took the victim's initial suspect description; and (4) file a timely motion for new trial. Additionally, the Petitioner contends that he received ineffective assistance of appellate counsel based upon appellate counsel's advice that there was no legitimate basis for an appeal, and appellate counsel's failure to request a delayed appeal. After our review, we conclude that the Petitioner has failed to establish that he is entitled to post-conviction relief and affirm the judgment of the post-conviction court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Reginald E. Shelton, Memphis, Tennessee, for the appellant, Ricky Frith.

Robert E. Cooper, Jr. Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Marianne Bell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

Following a jury trial, Ricky Frith ("the Petitioner") was convicted of attempted aggravated burglary[1] and sentenced as a career offender to 12 years in the Department of Correction. Thereafter, trial counsel filed a motion for new trial, asserting that the evidence was insufficient to support the Petitioner's conviction. However, because the Petitioner's motion for new trial was untimely, it was not heard by the trial court.

The Petitioner retained new counsel to pursue a direct appeal, and appellate counsel filed a motion with this Court to waive the timely filing of a notice of appeal. See State v. Ricky Frith, No. W2011-00944-CCA-MR3-CD (Tenn. Crim. App. May 13, 2011) (order). Although this Court granted the Petitioner's motion, the Petitioner voluntarily dismissed his appeal several months later. See State v. Ricky Frith, No. W2011-00944-CCA-MR3-CD (Tenn. Crim. App. November 30, 2011) (order).

The Petitioner then filed a timely *pro se* petition for post-conviction relief. Following the appointment of counsel, an amended petition was filed. At the post-conviction hearing, the Petitioner testified that about a week after the offense, he was arrested based upon the victim's identification of him in a photo lineup. The Petitioner explained that the main issue in his case had been the victim's identification of him as the perpetrator. To challenge the identification at trial, counsel thoroughly cross-examined the victim and presented alibi witnesses to establish that the Petitioner was visiting a friend in the hospital at the time of the burglary. The Petitioner complained, however, that trial counsel failed to obtain a copy of the sign-in sheet from the hospital.

The Petitioner also testified that trial counsel should have called Officer McNinch to testify about the victim's initial description of the suspect because the victim would have

---

[1] After its review of the trial transcripts, the post-conviction court provided the following summary of the offense:

> The victim, a University of Memphis student, heard and then observed the [P]etitioner repeatedly attempting to break in his glass door with a baseball bat. He went out another door and drew down on the [P]etitioner with a .40 caliber Smith and Wesson handgun, ordering him to "freeze." After about 15-20 seconds the [P]etitioner threw down his bat and ran away, the victim immediately calling 911. The perpetrator had been wearing a tank-top shirt with visible tattoos, and the [P]etitioner had become a suspect because of those tattoos.

-2-

been "caught lying" at trial. The Petitioner explained that the victim's initial description of the perpetrator did not match the description the victim gave at trial. Specifically, the victim testified at trial that the perpetrator had only one tattoo, but he told Officer McNinch that the suspect had a "half a sleeve [tattoo], from his shoulder to his elbow." According to the Petitioner, trial counsel should have called Officer McNinch to the stand to impeach the victim's trial testimony because other than the victim's testimony, the State had no other evidence linking the Petitioner to the crime.

The Petitioner acknowledged that trial counsel cross-examined the victim regarding his identification of the Petitioner and did a "pretty good job of pointing out that the guy was mistaken . . . ." During cross-examination, trial counsel asked the Petitioner to stand up and take off his shirt so that the jury could see the Petitioner's extensive tattoos. Additionally, trial counsel presented photographs to the jury, showing that the Petitioner had these tattoos at the time of the offense. Trial counsel argued in closing that the victim was mistaken about his identification of the Petitioner, and counsel pointed out that there was no physical evidence connecting the Petitioner to the scene. Additionally, trial counsel called six witnesses on the Petitioner's behalf to establish the Petitioner's alibi, but some of the times provided by his alibi witnesses were inconsistent.

The Petitioner testified that at the hearing on his motion for new trial, the trial court informed counsel that it would not hear the motion because it was not timely filed. The Petitioner testified that trial counsel did not discuss the issues to be raised in the motion for new trial with him. The Petitioner stated that he would have wanted to include an issue about the insufficiency of the victim's testimony to support his conviction. Additionally, he would have wanted to raise an issue of prosecutorial misconduct based upon the prosecutor's argument to the jury that there was nothing to show that the victim was mistaken in his identification. The Petitioner asserted that the prosecutor knew "that her victim, the witness, [was] telling two different stories."

The Petitioner testified that he hired appellate counsel to pursue a direct appeal. The Petitioner had a very lengthy discussion with appellate counsel, and appellate counsel explained that "there was no realistic possibility that [his] conviction would be reversed." Appellate counsel told the Petitioner that he had "no viable basis for an appeal" and later sent him a letter regarding withdrawing his appeal. Based upon his discussions with appellate counsel, the Petitioner signed a waiver and withdrew his appeal.

Trial counsel testified that he had 26 years of experience as a criminal defense attorney and had participated in "hundreds" of trials. Trial counsel explained that after being appointed to represent the Petitioner, he visited the Petitioner at the penal farm between five and 10 times and did not have any problems communicating with the Petitioner.

Trial counsel stated that he had sufficient time to investigate the circumstances of the offense and prepare for trial. Counsel explained that his trial strategy had been to challenge the victim's identification of the Petitioner and establish that the Petitioner had an alibi for the time of the offense. Trial counsel hired an investigator to locate and interview potential witnesses. Counsel spoke to the Petitioner's alibi witnesses "on more than one occasion" and discovered that they could not agree on some details. Based upon these inconsistencies, trial counsel recommended to the Petitioner that they not call all of the alibi witnesses. The Petitioner, however, wanted trial counsel to call all of the witnesses. Counsel recalled that while testifying, some of the witnesses got "a little tied up" regarding times and how they learned of the date of the offense.

Trial counsel testified that he attempted to obtain the hospital sign-in sheet, but it was not available. Counsel also attempted to obtain the medical records of the friend the Petitioner was visiting at the time of the offense; however, the hospital refused to release the records due to HIPPA regulations.

Regarding the victim's testimony, trial counsel testified that his primary goal was to "convince the jury that [the victim] did not see [the Petitioner] but he saw somebody else" because other than the victim's identification, there was no other evidence linking the Petitioner to the scene. To accomplish this goal, trial counsel cross-examined the victim "very, very thoroughly." At trial, the victim described the perpetrator as having only one tattoo. Trial counsel presented evidence, however, that the Petitioner had tattoos on both arms from his wrists to his shoulders, as well as tattoos across his chest. Trial counsel argued that there was no way that someone could look at the Petitioner and "not see all those tattoos."

Trial counsel explained that he did not call Officer McNinch to testify about the victim's initial description of the perpetrator because he did not want to bolster the victim's testimony with a more detailed description of the suspect. He further explained that he typically does not subpoena a witness "if I think the testimony . . . is going to hurt my case."

Trial counsel acknowledged that he filed an untimely motion for new trial, and the trial court refused to hear the motion. Trial counsel explained that it "fell through the cracks" and was filed five days late. Trial counsel testified that in the motion, he alleged that the evidence was insufficient and that the verdict was against the weight of the evidence based upon the inconsistencies in the victim's testimony and the strength of the alibi witnesses' testimony. When asked about any other issues that could have been raised in a motion for new trial, trial counsel stated, "[J]ust from looking back and thinking back about this trial, I don't see any appealable issues." Trial counsel opined that the trial court had been "very, very cautious" and "ran a good, clean trial." When asked about the possibility of raising an

issue of prosecutorial misconduct, trial counsel stated, "Oh no. No, there was not prosecutorial misconduct."

Robert Hardy, Jr., a licensed attorney, testified that trial counsel allowed him to sit in and observe the Petitioner's trial. Hardy explained that he was not appointed or retained on the case, and he did not assist counsel in trying the case. According to Hardy, the Petitioner and trial counsel had been working on the case "for a year or so and they had what would appear to be a great game plan and a great strategy." Hardy recalled that the perpetrator's identity was an issue at trial.

Hardy testified that on the day of the Petitioner's sentencing hearing–November 10, 2010–trial counsel had a scheduling conflict and asked Hardy to stand in for him. Hardy explained that the sentencing hearing was "more or less a formality" as to the sentence the Petitioner would receive based upon the Petitioner's status as a career offender. After sentencing, the trial court discussed the importance of filing a timely motion for new trial. The court explained that the hearing date would be set outside the 30-day window and warned that trial counsel should not wait until the day of the hearing to file the motion. Hardy told trial counsel that he needed to file the motion for new trial by December 10, 2010, and wrote a letter to trial counsel memorializing their conversation. Hardy recalled that on the day of the scheduled hearing on the motion for new trial, the trial court ruled that it could not hear the motion because it was untimely.

Appellate counsel testified that he had been a practicing attorney for about 30 years and had 25 years of experience as a criminal defense lawyer. Appellate counsel explained that in the past 10 years, he had handled primarily appeals and post-conviction proceedings. After the Petitioner retained appellate counsel to represent him in a direct appeal, counsel filed a motion with the appellate court asking that it waive the timely notice of appeal requirement, and the court granted the motion. Appellate counsel noted that the motion for new trial filed by trial counsel only raised sufficiency of the evidence as a ground for relief. He explained that even though the trial court did not hear the motion, this did not preclude raising the issue of the sufficiency of the evidence on direct appeal.

Appellate counsel visited the Petitioner at the penal farm, and they spoke at length about the Petitioner's appeal. However, after reviewing the trial record and discussing the case with the Petitioner, appellate counsel opined that there was not a realistic possibility that the Petitioner's conviction could be reversed. He told the Petitioner that the only real issue in the case was the credibility of the State's witnesses, and therefore, he really did not have a basis for an appeal. After their meeting, appellate counsel sent a letter to the Petitioner memorializing their decision that the Petitioner would be withdrawing the appeal because he had "no viable basis for an appeal." Appellate counsel then filed a motion to withdraw the

Petitioner's appeal to which he attached a copy of the Petitioner's waiver of his right to appeal.

Appellate counsel testified that he stood by his original conclusion that the Petitioner had no appealable issues. He stated:

> I thought the case was well-tried and that I didn't think–I didn't think there were really any issues that were likely to have any effect on the outcome of the case. You know, while it's true of course sufficiency of the evidence is always technically an issue, it's almost never practically an issue. And because of the, you know, that is a question for the jury. And once the jury has made that determination, then it's almost impossible to get it reversed. I mean, an appeal is not about factual issues. It's about legal issues. And so, you know, you can always raise the issue of sufficiency of the evidence. But for instance, in this case, you know, the victim identified the [Petitioner] as the perpetrator without hesitation. And as far as sufficiency of the evidence goes, that's the end of it. That's all there is to it. The jury has made its decision.

Regarding the issue of impeaching the victim's trial testimony with the initial description of the suspect the victim gave to Officer McNinch, appellate counsel agreed with trial counsel that the prior statement should not come in at trial. Appellate counsel explained:

> I thought it was clear that that prior statement should not come into the trial because you've got–you had a fairly weak description at the trial by the victim of the tattoos of the defendant, but then you've got this statement right at the end of the offense which gives a much more accurate description of the tattoos. My, you know, reaction to that is there's no way in heck that I would let that in front of the jury if I could help it.

After the hearing, the post-conviction court entered a written order denying relief. This appeal followed.

## II. Analysis

Post-conviction relief is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn.

-6-

Code Ann. § 40-30-103 (2013). In order to prevail on a post-conviction claim, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2013); see Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the evidence preponderates against the finding. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. However, with respect to issues raising a mixed question of law and fact, including a claim of ineffective assistance of counsel, our review is *de novo* with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

The Post-Conviction Procedure Act provides that a trial judge may grant a delayed appeal if it "finds that the petitioner was denied the right to an appeal from the original conviction in violation of the Constitution of the United States or the Constitution of Tennessee." Tenn. Code Ann. § 40-30-113 (2013). In addition, Tennessee Code Annotated section 40-30-111(a) provides that a court may order a delayed appeal if it finds that a petitioner's counsel was ineffective on direct appeal. "These statutes clearly indicate that a defendant may receive a delayed appeal where there has been a denial of the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution." Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Id.; Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997); Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579.

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded

of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. As the Tennessee Supreme Court stated in Baxter,

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-36 (quoting Beasley v. United States, 491 F.2d 687 (6th Cir. 1974)). Therefore, in order to prove that counsel was deficient, the petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). This Court will not find counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

Our Supreme Court has stated that although the prejudice prong typically requires actual prejudice, "there is a small category of cases in which actual prejudice need not be shown." Wallace, 121 S.W.3d at 657 (citations omitted). One such situation is "where

counsel's performance is so deficient that it becomes presumptively prejudicial." Id. (citing United States v. Cronic, 466 U.S. 648, 658 (1984)). Moreover, "when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' the process becomes 'presumptively unreliable' and proof of actual prejudice is not required." Id. (quoting Cronic, 466 U.S. at 659).

In Wallace, trial counsel filed an untimely motion for new trial. Id. at 658. Although the defendant was able to raise the issue of sufficiency of the evidence on direct appeal, our Supreme Court determined that trial counsel's actions "resulted in the failure to preserve and pursue the available post-trial remedies and the complete failure to subject the State to the adversarial appellate process." Id. However, our Supreme Court expressly declined to create a *per se* rule regarding the failure of trial counsel to file a timely motion for new trial. Id. at 659. Rather, "a petitioner in a post-conviction proceeding must establish that he or she intended to file a motion for new trial and that but for the deficient representation of counsel, a motion for new trial would have been filed *raising issues in addition to sufficiency of the evidence.*" Id. (emphasis added).

*Trial Counsel's Failure to Adequately Communicate, Investigate, and Prepare for Trial*

On appeal, the Petitioner contends that trial counsel was ineffective because he failed to adequately communicate, investigate, and prepare for trial by obtaining "exonerating records" that could have been used to bolster the Petitioner's alibi defense. The State argues that the post-conviction court properly found that the Petitioner failed to establish either deficient performance or prejudice.

Regarding this claim, the post-conviction court found that during the time span of the offense, the Petitioner claimed that he was first with some family members and then at the hospital visiting a friend who had been injured in an unrelated incident. Trial counsel hired a private investigator to locate the friend and obtain any records from the hospital concerning the Petitioner's visit. Trial counsel testified, however, that the investigator was unable to subpoena the friend or obtain any hospital records. The post-conviction court found that the hospital told trial counsel that it did not have a record of the sign-in sheet, but the defense "tried to get that." The post-conviction court concluded, "As no records were offered during the hearing of this petition, this court has no way of determining whether or not they existed, were capable of being produced or would have helped the petitioner's alibi."

We agree with the post-conviction court that the Petitioner has failed to establish either deficient performance or prejudice. Trial counsel testified that he attempted to obtain hospital records to prove that the Petitioner had been at the hospital at the time of the offense. Despite trial counsel's efforts, the hospital did not have any record of the Petitioner being

there, and it would not release the medical records of the victim's friend. The Petitioner has not suggested any additional investigation or actions trial counsel could have taken that might have produced these records. Additionally, the Petitioner has failed to establish that he was prejudiced by trial counsel's failure to obtain the records because he did not produce the records at the post-conviction hearing or otherwise establish that they would have supported his alibi defense. Thus, the Petitioner is not entitled to relief.

*Trial Counsel's Failure to Challenge the Petitioner's Illegal Arrest*

The Petitioner also asserts that trial counsel rendered ineffective assistance based upon counsel's failure to raise a claim of an illegal arrest under the Fourth Amendment. Regarding this allegation, the post-conviction court found that the Petitioner failed to present any proof to show that there were illegalities in the Petitioner's arrest or the identification from the photo lineup. We agree that the record is devoid of proof to support this claim and find that the post-conviction court properly denied relief on this basis.

*Trial Counsel's Failure to Subpoena Officer McNinch*

The Petitioner contends that he was denied effective assistance of counsel based upon trial counsel's failure to subpoena Officer McNinch to impeach the victim's testimony. The Petitioner insists that the offense report taken by Officer McNinch contradicts the victim's description of the Petitioner at trial. Based upon our review of the record, we conclude that the Petitioner has failed to establish either deficient performance or prejudice.

Trial counsel testified that although there were some inconsistencies between the victim's trial testimony and the description the victim gave to Officer McNinch–such as the location of the tattoos on one arm–the actual description of the tattoos in the officer's report was a much more detailed and accurate match to the Petitioner than the victim's description at trial. The post-conviction court found that although trial counsel wished to impeach the victim with certain statements in the report, he did not want Officer McNinch to be able to testify to the more accurate prior statement of the victim, which had been given right after the burglary occurred. Trial counsel believed that such a tactic would have bolstered the victim's identification of the Petitioner. The post-conviction court found that rather than calling Officer McNinch, trial counsel chose to impeach the victim using prior photographs of the Petitioner's tattoos and with the testimony of alibi witnesses. Appellate counsel agreed that this was a reasonable trial strategy on the part of trial counsel. Appellate counsel testified it would be "crazy" to let the jury hear about the victim's initial description of the perpetrator given to Officer McNinch.

Under the circumstances, we find that the decision not to call Officer McNinch to testify was a reasonable tactical decision on the part of trial counsel and does not amount to deficient performance. Further, the Petitioner has failed to establish any resulting prejudice based upon trial counsel's failure to call Officer McNinch. This Court will not find counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden, 816 S.W.2d at 60. The Petitioner is not entitled to post-conviction relief based upon the claim.

*Trial Counsel's Failure to File a Timely Motion for New Trial*

The Petitioner also contends that he was denied effective assistance of counsel based upon trial counsel's failure to file a timely motion for new trial. He asserts that trial counsel's performance was deficient, and prejudice should be presumed because counsel failed entirely to subject the prosecution's case to the adversarial process. The State concedes that trial counsel's failure to file a motion for new trial in a timely manner was deficient performance. Nonetheless, the State contends that the post-conviction court properly denied relief because counsel's deficient performance did not prejudice the Petitioner.

The post-conviction court found that trial counsel's failure to file a timely motion for new trial was deficient performance, and we agree. See Wallace, 121 S.W.3d at 657 (concluding that counsel's failure to file a timely motion for new trial, as well as his failure to withdraw so as to allow the defendant to file a *pro se* motion for new trial, was deficient performance); Timothy J. Turner v. State, No. M2008-00372-CCA-R3-PC, 2009 WL 1175116, at *5-6 (Tenn. Crim. App. May 1, 2009) (granting post-conviction relief when it was clear that the petitioner intended to file a motion for new trial, asserting issues other than sufficiency of the evidence and sentencing, and that trial counsel failed to do so). The post-conviction court concluded, however, that the Petitioner failed to prove prejudice because both trial and appellate counsel testified that there were no viable issues that were waived by the late filing of the motion for new trial. Regarding the issue, the post-conviction court stated:

> This case was a clear case of whether or not the petitioner had been sufficiently identified, with the victim swearing he was committing a burglary and the [P]etitioner's alibi witnesses swearing he was somewhere else. There have been no errors suggested that were committed by the trial judge which would have garnered the [P]etitioner a new trial had the motion been timely filed and heard. The trial itself was purely an issue of the credibility of the witnesses, and it is obvious from a reading of

-11-

the trial record that the [P]etitioner's alibi witnesses ran into difficulties with their stories. [Appellate counsel] testified at the hearing that there simply were no appellate issues to raise except the sufficiency of the evidence, which was bound to fail as it was a jury issue, because the proof was legally sufficient.

The post-conviction court further found that the Petitioner decided to waive his right to an appeal following a discussion with appellate counsel.[2] It found that appellate counsel memorialized his discussion with the Petitioner in a letter that stated:

You are withdrawing the appeal simply because you have no viable basis for an appeal. The only real issue in your case was the credibility of the state's witnesses and the jury is the final arbiter of that.

As for a post-conviction, you can file one and if you want to hire me to file it I will. I merely advised you that in my professional opinion you would have no chance of winning a post-conviction.

Following our review, we conclude that the record supports the post-conviction court's finding that the Petitioner failed to establish prejudice. The Petitioner did not establish that but for trial counsel's deficient performance, a motion for new trial would have been filed raising issues in addition to sufficiency of the evidence. In the motion for new trial filed by trial counsel, only the issue of the sufficiency of the evidence was raised. When asked about any other issues that could have been raised in a motion for new trial, trial counsel stated, "[J]ust from looking back and thinking back about this trial, I don't see any appealable issues." Trial counsel opined that the trial court had been "very, very cautious" and "ran a good, clean trial." When asked about the possibility of raising an issue of prosecutorial misconduct, trial counsel stated, "Oh no. No, there was not prosecutorial misconduct."

Likewise, appellate counsel testified that after reviewing the trial record and discussing the case with the Petitioner, he told the Petitioner that the only real issue in his

---

[2] We do not address the issue of the effect of the Petitioner's previous waiver of his direct appeal on his ability to now obtain a delayed appeal. The State has not asserted, either at the post-conviction hearing or on appeal, that the Petitioner is not entitled to a delayed appeal based upon his previous waiver. Moreover, as the issue of whether the Petitioner's waiver of appeal was knowing and voluntary was not before the post-conviction court, the record before us is insufficient to address the question.

case was the credibility of the State's witnesses, and therefore, he had "no viable basis for an appeal." Appellate counsel testified that the Petitioner agreed to withdraw the appeal because there was no legitimate basis for appeal.

Because the Petitioner failed to prove that but for counsel's deficient performance, he would have filed a motion for new trial raising an issue in addition to sufficiency of the evidence, see Wallace, 121 S.W.3d at 659, the Petitioner has not established prejudice, and the post-conviction court properly denied relief.

*Appellate Counsel's Failure to Request a Delayed Appeal*

The Petitioner argues that he received ineffective assistance of counsel based upon appellate counsel's advice that the Petitioner had no legitimate basis for an appeal and appellate counsel's failure to request a delayed appeal. The State asserts that the post-conviction court properly denied relief. We agree with the State.

In its order denying relief, the post-conviction court found that after he was retained, appellate counsel filed a motion in this Court asking that the Court waive the timely notice of appeal in the Petitioner's case. After this Court granted the motion, appellate counsel filed a notice of appeal on the Petitioner's behalf within the ten days permitted by the Court's order. The Petitioner made the decision to waive his appeal after a long discussion with appellate counsel. Regarding appellate counsel's advice to the Petitioner that there were no legitimate basis for an appeal, the post-conviction court concluded that the Petitioner had failed to show that this advice was deficient or that he suffered any prejudice by waiving his appeal. The court explained that the Petitioner had suggested "no appellate issue which would have had any chance of success." The court concluded, "The sole issue in the petitioner's trial was one of identification, which was resolved by the jury."

The record supports this determination by the post-conviction court. At the evidentiary hearing on the petition, appellate counsel testified:

> Q. And in your opinion, having done this for 10 years and having been a criminal defense attorney for 20 years, you said there was no appealable issue?
>
> A. Right. And I stand by that. I think that's absolutely correct.

Trial counsel likewise testified that he did not see any appealable issues based upon the trial record. On appeal, the Petitioner has failed to demonstrate that appellate counsel's advice in this regard was deficient.

The Petitioner also faults appellate counsel for failing to seek a delayed appeal through filing a petition for post-conviction relief. He states that if such a petition had been granted, his judgment of conviction would have been reentered, and appellate counsel could have filed a timely motion for new trial, preserving the Petitioner's appellate issues. It is clear, however, that appellate counsel's alleged deficiency did not affect the Petitioner's ability to file the instant petition for post-conviction relief in a timely manner or request a delayed appeal. Moreover, the Petitioner has failed to establish that he would have raised an issue in addition to sufficiency of the evidence in his motion for new trial, and this issue could have been the basis for an appeal to this Court without the filing of a timely motion for new trial. Thus, we cannot conclude that the Petitioner suffered any prejudice from appellate counsel's alleged deficiency, and the Petitioner is not entitled to relief.

### III. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
ROBERT L. HOLLOWAY, JR., JUDGE